IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 1 2017

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| JOSE LUIS HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-182-A |
| | § | |
| RESULTS STAFFING, INC., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the motion filed by
defendant, Results Staffing, Inc., on April 27, 2017, for relief
from judgment and for sanctions. After having considered such
motion, the memorandum filed by plaintiff, Jose Luis Hernandez,
on May 10, 2017, in opposition thereto, the record of the
June 12, 2017 hearing on the motion, all filings by the parties
on the subjects of the motion, the record of the May 26, 2015
trial leading to the entry of this court's final judgment on
May 26, 2015, the opinion of the United States Court of Appeals
for the Fifth Circuit reversing that final judgment and rendering
judgment in favor of plaintiff on his reemployment claim, certain
parts of the record of the Fifth Circuit in plaintiff's appeal,
and pertinent legal authorities, the court has concluded that
defendant's Rule 60 motion should be granted, that other rulings

should be held in abeyance, and that the court should certify its Rule 60 ruling for interlocutory appeal.

I.

Nature and History of the Litigation

This action was initiated by plaintiff on March 11, 2014, by plaintiff's complaint alleging that defendant violated his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("Act"), 38 U.S.C. §§ 4301, et seq., by terminating his employment the second day after he returned from a weekend training session in which he was required to participate because of his membership in the United States Army Reserve.  After a non-jury trial conducted on May 26, 2015, the court rendered judgment denying plaintiff any relief from defendant.  Plaintiff appealed to the Fifth Circuit.

On January 30, 2017, the Fifth Circuit issued its opinion reversing this court's judgment, rendering judgment in favor of plaintiff on his reemployment claim, and remanding the case to this court to determine his damages and for other proceedings consistent with the Fifth Circuit's opinion.  Hernandez v. Results Staffing, Inc., 677 F. App'x 902 (5th Cir. 2017).

II.

### The Factual and Legal Bases of the Opinion of the Fifth Circuit

While the Fifth Circuit in its January 30, 2017 opinion noted that plaintiff was asserting more than one theory of violation of the Act, it evaluated the merits of only one of the theories. It based its decision on the Act's convalescent period provision, which extends the reporting period for an employee who sustains injuries during his military service.[1]  *Hernandez*, 677 F. App'x at 905-908. In support of its holding, the Fifth Circuit considered that the record of the May 26, 2015 trial established as a matter of law, and without dispute, the following facts:

> The undisputed facts in this case demonstrate that [plaintiff] aggravated a pre-existing back injury during his military service. [Plaintiff] began to experience discomfort in his back while still on duty and sought medical attention from military medical staff members. When [plaintiff] awoke at home on the morning of Monday, July 15, 2013, he was in severe pain and was unable to walk. [Plaintiff] was taken to the hospital where he received pain killers and muscle relaxers, and he spent the remainder of the day convalescing at home.

---

[1] The convalescence period provision upon which the Fifth Circuit based its ruling reads as follows:

> A person who is hospitalized for, or convalescing from, an illness or injury incurred in, or aggravated during, the performance of service in the uniformed services shall, at the end of the period that is necessary for the person to recover from such illness or injury, report to the person's employer . . . .

38 U.S.C. § 4312(e)(2)(A).

3

* * * * *

> The facts in this case demonstrate that [plaintiff]
> could not have reported on July 15 because the service-
> related aggravation of his injury prevented him from
> doing so. Even if [defendant] required [plaintiff] to
> report to work on July 15, [plaintiff] was excused from
> reporting by the plain language of § 4312(e)(2)(A)
> because he was "convalescing from[] an . . . injury . .
> . aggravated during[] the performance of service" and
> he was not required to report to work until "the end of
> the period that [was] necessary for" his recovery.
> 38 U.S.C. § 4312(e)(2)(A).

Id. at 906.

The evidentiary basis for the Fifth Circuit's determination

that those facts were undisputed was described in the opinion as

follows:

> At trial, [plaintiff] offered his own testimony, the
> testimony of his wife, and a note from his physician to
> demonstrate that his convalescence lasted until the
> morning of July 16.  [Plaintiff] testified that on
> July 15, he was admitted to the emergency room and that
> he received muscle relaxer, pain killers, and an IV as
> the doctors monitored him to see how long it would take
> for his muscles to relax.  [Plaintiff]'s wife testified
> that after [plaintiff] was discharged from the
> hospital, he was "sleepy" and returned home and slept.
> She also testified that she took the day off of work to
> care for [plaintiff].  Finally, [plaintiff] submitted a
> note from his physician into evidence, which said,
> "Jose Hernandez was under my care on July 15, 2013.  He
> will be able to return to work on July 16, 2013."

Id. at 907.  The Fifth Circuit thought significant that defendant

"acknowledged at oral argument [that] none of this evidence is

4

disputed."[2]  Id.  From that evidence and defendant's
acknowledgment at oral argument, the Fifth Circuit concluded
"that [plaintiff] did provide evidence that his convalescence
lasted until the morning of July 16 such that [plaintiff]
qualified for reemployment under § 4312(e)(2)(A).  Id.

    The Fifth Circuit held that defendant's "failure to reemploy
[plaintiff] when he reported after his period of convalescence
ended violated § 4312(a)" and that this court "erred by failing
to address whether [plaintiff] satisfied the reemployment
requirements of § 4312(e)(2)(A)'s convalescence provision in

---

[2]The following exchange occurred during the oral argument:
    MR. MCCLUNG: . . . Let me return to a point as well that the judges had raised
regarding his back problem manifesting on Sunday.  The facts show that his back
problem actually had manifested on Sunday.  He testified that at approximately noon on
Sunday he had sought and received medical attention for the back problem, and so it was
already known to him.  He did not mention that on the call Sunday evening, and he did
not reach out to the employer at any point on Sunday evening.  And then he slept through
his alarm on Monday morning.
    JUDGE ELROD: But wasn't that because he was trying to shake it off and -- you
know, if you have a chronic back thing, you have some days that are better than others
and some days you push through and he thinks he's going to be okay to go to work the
next day.
    MR. MCCLUNG: That was his claim, yes.  That was his claim.
    JUDGE ELROD: And there's no rebuttal to that?  I mean, is there?
    MR. MCCLUNG: Well, we -- we have little to go on as far as what his actual
condition was or level of pain other than his testimony.  There's -- there's no other real
evidence one way or the other.
    JUDGE ELROD: The district court didn't disbelieve his testimony or make any
findings to that effect, did he.
    MR. MCCLUNG: With regard to his back injury?
    JUDGE ELROD: Yes.
    MR. MCCLUNG: No, I don't believe the district court did.

Doc. 147 at 82-83; Hr'g Ex. 14 at 23-24.

light of the undisputed evidence pertaining to [plaintiff's] back injury." Id. at 906.  In Conclusion, the Fifth Circuit summed up that plaintiff

> qualified for reemployment under the plain language of
> § 4312(e)(2)(A)'s convalescence provision when he
> aggravated a preexisting back injury during military
> service and when he reported to work on Tuesday,
> July 16, 2013, at the end of his period of
> convalescence.   [Defendant]'s failure to reemploy
> [plaintiff] after his period of convalescence violated
> § 4312.

Id. at 908.

### III.

### Grounds of Defendant's Motion

By the April 27, 2017 motion, defendant seeks relief pursuant to the provisions of Rules 60(b)(3) and (6)[3], and 37(c)[4] of the Federal Rules of Civil Procedure.  Defendant "move[d] this Court for (i) relief from the Fifth Circuit's judgment rendering

---

[3]Rules 60(b)(3) and (6) read as follows:

(b)   GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING.  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

. . . .

(6) any other reason that justifies relief.

[4]Rule 37(c) pertains to sanctions that the court can impose on a party by reason of the party's failure to comply with discovery obligations, including the duty to make supplemental disclosures and responses if additional responsive information is obtained by a party after the party has initially disclosed or responded to the opposing party's discovery requests.

liability against it under the [Act], and (ii) sanctions against Plaintiff[] for his discovery abuse." Doc. 111 at 1.[5]

As grounds for the motion, defendant alleged that after the Fifth Circuit issued its January 30, 2017 opinion rendering judgment for plaintiff against defendant on plaintiff's reemployment claim, and during the course of discovery related to the issues remanded to this court for resolution, defendant discovered evidence that established that one or more of the factual bases of the Fifth Circuit's opinion were incorrect and that the trial evidence upon which the Fifth Circuit relied in concluding that those facts were undisputed was the product of misrepresentation, fraud, and misconduct by plaintiff and his counsel.

Defendant learned that plaintiff and his wife had given false testimony at trial concerning plaintiff's service-related back condition and his reason for going to the emergency room for medical assistance the morning of July 15, 2013, and that plaintiff and his counsel had in their possession in advance of the trial hospital records, which should have been, but were not, disclosed to defendant before the trial, that showed the true

---

[5]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:14-CV-182-A.

reason for his trip to the emergency room the morning of July 15, 2013.

Accompanying the motion was an appendix that contained, inter alia, medical records that defense counsel obtained from plaintiff's counsel during the taking of a post-appeal deposition of plaintiff.[6]  The records were the emergency room records of the hospital at which plaintiff received emergency care the morning of July 15, 2013.  Doc. 113 at App. 008-031.  The entries that defendant found significant appear to be from the notes of the emergency room physician, David Lewis Kocurek, M.D., reading as follows:

> HPI Comments: History of Present Illness:
>
> Historian: Patient.
>
> Chief Complaint: Headache, frontal
> Onset/Duration of symptoms: Today
> Where did it Occur: Home
> Severity: severe.
> Time Course: Persisting.
> Context of Events: Spont onset
> Worsened by: nothing
> Improved by: nothing
> Associated Symptoms: Low back pain, sharp - similar to prev
> Treatments Prior to Arrival: None
> Sick Contacts: None
> Recent Doctor Visits or Treatments: None
> Similar Symptoms Previously: Yes, dx with migraines

---

[6]Defendant said in its brief that it learned that plaintiff's counsel had possession of the records pertaining to plaintiff's July 15, 2013 emergency room visit as the result of counsel's request of the hospital for all its records pertaining to plaintiff to assist counsel in understanding plaintiff's damages model, and that he received the hospital records he requested on March 30, 2017.  Doc. 112 at 7.

Id. at App. 011.  The records show (1) under the heading "Past Medical History" as the first diagnosis "[m]igraine," id. at App. 012, (2) that the "Encounter Diagnosis" was "[h]eadache (primary encounter diagnosis)" and "[l]ow back pain," id. at App. 015, and (3) that the location of defendant's headache was "Generalized," id. at App. 021.

Also in the appendix was an excerpt of the testimony plaintiff gave at the May 26, 2015 trial in explanation of his visit to the emergency room on the morning of July 15, 2013, thus providing a contrast with the explanation in the emergency room records of why he was there.  Id. at App. 007.  He testified at the trial that:

> A.    I woke up, and I was in severe pain.  My left leg was locked at a 90-degree angle.  I had a stabbing sensation in the lower left side of my back.  I was crying.  I was wincing.  At times, it was difficult to breathe.

Id.

Evidence defendant provided with its motion established that the medical records came from the file of plaintiff's counsel, that plaintiff's counsel sent a letter to the hospital on April 30, 2015, accompanied by a written authorization signed by plaintiff on April 22, 2015, requesting the affidavit and records, and that those items were picked up at the hospital on

May 13, 2015, thirteen days before the trial commenced.  Id. at
App. 041-042, 125-126.

A part of the appendix to the defendant's motion was a copy
of a response made by plaintiff to requests for production
directed to him by defendant before the May 26, 2015 trial.  Id.
at 128-130; Doc. 112 at 8.  Included was a request for "[a]ll
documents related to any visits Plaintiff had with civilian
medical personnel in July 2013, including all documents related
to Plaintiff's visit to the hospital on July 15, 2013, as alleged
in Plaintiff's Petition."  Doc. 113-1 at App. 129.  After
expressing several objections to the request, plaintiff
responded: "Exhibit 17   Texas Health Arlington Memorial Hospital
Letter 7/15/2013."  Id.[7]  Plaintiff and his counsel did not
supplement his response in advance of the trial; rather, counsel
for defendant first saw the emergency room records plaintiff's
counsel had received almost two weeks before the trial when they

---

[7]The July 15, 2013 letter was the note to which the Fifth Circuit referred in its opinion as "a note
from his physician to demonstrate that his convalescence lasted until the morning of July 16."
Hernandez, 677 F. App'x at 906.  The letter was marked Exhibit 16 at the May 26, 2015 trial.  While the
handwriting on the letter leaves much to be desired, presumably it was of the emergency room physician
who made the notes in the emergency room record that plaintiff's chief complaint upon admission to the
emergency room was headache, as well as the other entries mentioned above.  The letter gave no
indication as to the nature of the condition for which plaintiff had been under the physician's care.  It
simply said "Jose Hernandez was under my care on July 15, 2013.  He will be able to return to work on
July 16, 2013."  May 26, 2015 Trial Ex. 16.

were produced by plaintiff's counsel during plaintiff's post-appeal deposition.  Doc. 112 at 8-9.

IV.

## Positions Taken by Plaintiff in His Responses in Opposition to the Motion

On May 10, 2017, plaintiff filed a memorandum, with a supporting appendix, in opposition to defendant's motion, Docs. 122 and 123; on July 24, 2017, plaintiff filed a second brief and supporting appendix in opposition to the motion, which took into account evidence received at the June 12, 2017 hearing on the motion, Docs. 148 and 149; and, on August 7, 2017, plaintiff filed a third brief in opposition to the motion, Doc. 151.  The grounds of plaintiff's opposition to the requests for Rule 60(b) relief are:

1.   The first-stated basis of opposition was that this court lacks jurisdiction to grant defendant's motion because it seeks to vacate a judgment rendered by the Fifth Circuit. Doc. 122 at 1-3; Doc. 148 at 1-4.

2.   Next, plaintiff argued that the medical records confirm that plaintiff was treated for a back injury.  Doc. 122 at 3-8.

3.    Plaintiff urged that he did not engage in fraud, misrepresentation, or misconduct.  Doc. 122 at 8-11; Doc. 148 at 4-9; Doc. 151 at 2-4.

4.    Plaintiff maintained that defendant should be denied the relief it seeks by its motion because it has failed to prove that the medical records were unavailable to it if it exercised diligence, a position he combined with arguments that defendant has not proved that it was denied a full and fair opportunity to present a defense.  Doc. 122 at 10-11; Doc. 148 at 9-13; Doc. 151 at 4-9.

5.    Finally, plaintiff argued that the relief requested by defendant under Rule 60(b)(6) should be denied because the request for relief under that part of Rule 60 is factually indistinct from defendant's claim for relief under Rule 60(b)(3).  Doc. 148 at 13.

Plaintiff maintains that defendant's request for Rule 37(c) sanctions should be denied because the failure of plaintiff to produce the emergency room records in response to defendant's discovery request was harmless to defendant.  Doc. 122 at 12. Plaintiff follows that with the contentions that his counsel's failure to disclose was inadvertent, that the evidence was unimportant to the defense, and that, in any event, the records

that he should have produced for defendant were more helpful to him than the defendant. He adds reasons why he thinks the particular sanctions sought by defendant would not be authorized, but the court does not find necessary at this point to discuss those additional reasons.

V.

### The Request for Rule 60(b) Relief

The court is satisfied, and finds, that plaintiff's visit to the emergency room the morning of July 15, 2013, was not for care or treatment of an aggravation of a back condition he suffered while on military duty over the preceding weekend but, instead, was for treatment of a severe headache, probably a migraine in character, that had its onset after he arrived home the morning of July 15, 2013, and that the low back pain he mentioned upon his hospital admission as an associated symptom was not the cause of his visit to the hospital but was a non-disabling chronic back pain that he had been suffering for years. The court further finds that to whatever extent plaintiff and his wife gave testimony inconsistent with the findings expressed in the preceding sentence, their testimony was intentionally false, and was given by them in order to disadvantage and mislead the defendant in its trial preparation and presentation, and that it

13

ultimately misled the Fifth Circuit in plaintiff's appeal from
this court's judgment of dismissal.

The court is further satisfied, and finds, that plaintiff's
counsel had, and knew the contents of, the records of plaintiff's
visit to the emergency room the morning of July 15, 2013, many
days before the trial commenced on May 26, 2015, and that he did
not take appropriate steps to supplement an incomplete and
misleading response plaintiff had made to defendant's previously
served discovery request on plaintiff seeking production of all
documents related to plaintiff's visit to the emergency room;
and, the court is satisfied, and finds, that counsel for
plaintiff did not disclose those records to counsel for defendant
in advance of the trial for the purpose of misleading defendant
and its counsel into believing that plaintiff's July 15, 2013
visit to the emergency room was for care and treatment of an
aggravation of a back condition that he suffered over the weekend
while performing military duties.

The court further finds that the misrepresentations made by
plaintiff and his wife at the trial concerning plaintiff's reason
for seeking emergency room care the morning of July 15, 2013, and
the withholding of the emergency room records by plaintiff's
counsel from defendant's trial counsel before and during that

trial, put defendant at an unfair disadvantage in defending
itself at the trial, put defendant's appeal counsel at an unfair
disadvantage in his presentations to the Fifth Circuit and in
answering questions the members of the Fifth Circuit posed to him
during oral argument, and put the Fifth Circuit at an unfair
disadvantage in evaluating what the true facts were concerning
the July 15, 2013 visit to the emergency room.

All of the findings stated above are made based on clear and
convincing evidence.

The court turns now to the reasons plaintiff has given for
denial to defendant of the Rule 60(b) relief it seeks by its
motion.

A.   The Reasons Given by Plaintiff for Denial of the Motion Lack
     Merit

     1.   This Court Has the Authority to Vacate the Judgment of
          the Fifth Circuit if a Vacatur is Appropriate Under a
          Provision of Rule 60

In Standard Oil Co. of California v. United States, the
Supreme Court had summarily affirmed the judgment of the district
court in favor of the government.  429 U.S. 17 (1976)(per
curiam).  Preliminary to filing a motion in the district court
pursuant to Rule 60(b) of the Federal Rules of Civil Procedure,
the defendant filed a motion in the Supreme Court requesting that
it recall its mandate and grant defendant leave to proceed in the

district court.  Id.  The Supreme Court held that "the District
Court may entertain a Rule 60(b) motion without leave by this
Court."  Id.  It, therefore, denied the motion to recall the
mandate, without prejudice to the defendant to proceed in the
district court.  Id.

The Supreme Court then directed its attention to the often-
expressed belief that an appellate court's mandate bars the trial
court from later disturbing the judgment entered in accordance
with the mandate, id. at 18, and the argument that the appellate-
leave requirement protects the finality of the judgment and
allows the appellate court to screen out frivolous Rule 60(b)
motions, id.  Both of those views were rejected by the Court.
Id.  As to the first, the Court explained that "the appellate
mandate relates to the record and issues then before the court,
and does not purport to deal with possible later events," with
the consequence that "the district judge is not flouting the
mandate by acting on the motion."  Id.  As to the second, the
Court noted that "the interest in finality is no more impaired in
this situation than in any Rule 60(b) proceeding" and that it had
"confidence in the ability of the district courts to recognize
frivolous Rule 60(b) motions."  Id. at 19.  The Court added that
"[i]ndeed, the trial court is in a much better position to pass

upon the issues presented in a motion pursuant to Rule 60(b)."
Id. (internal quotation marks and citations omitted).

The Court explained why it viewed the appellate-leave requirement to be inappropriate by saying:

> The appellate-leave requirement adds to the delay and expense of litigation and also burdens the increasingly scarce time of the federal appellate courts. We see no reason to continue the existence of this unnecessary and undesirable clog on the proceedings.

Id. (internal quotation marks and citations omitted).

This court has not found any post-Standard Oil Co. court decision that has varied from the ruling and explanations of the Supreme Court in that case.

In a recent unpublished opinion of the Fifth Circuit, the Fifth Circuit, in reliance on the Standard Oil Co. decision, rejected a contention that the district court lacked subject-matter jurisdiction to amend its judgment pursuant to a Rule 60(b) motion after it was affirmed by the Fifth Circuit on appeal. Lindy Invs. III v. Shakertown 1992 Inc., 360 F. App'x 510, 512 (5th Cir. 2010).

A case that illustrates the lack of merit of plaintiff's contention that a motion under Rule 60(b) to vacate the judgment of an appellate court reversing the district court judgment cannot be entertained by the district court is DeWeerth v.

17

Baldinger, 38 F.3d 1266 (2d Cir. 1994). DeWeerth brought suit against Baldinger in district court to recover a painting. The district court found that DeWeerth had established a superior right to the painting, and issued a judgment in her favor. The ruling of the district court was based in part on the conclusion that the applicable New York statute of limitations had not run on DeWeerth's claim to the painting. Baldinger appealed, and the Second Circuit reversed the judgment of the district court on the ground that under applicable New York law limitations had run. DeWeerth v. Baldinger, 836 F.2d 103 (2d Cir. 1987). The Second Circuit issued a mandate directing that the judgment in favor of DeWeerth be reversed, and the Supreme Court denied DeWeerth's petition for writ of certiorari.

Over three years later, DeWeerth filed a motion with the Second Circuit asking it to withdraw its prior mandate and vacate its judgment of reversal because the New York Court of Appeals had held in the interim that the New York statute of limitations applicable to the action did not require the showing the Second Circuit had held it required. If the rule of the New York Court of Appeals had been applied by the Second Circuit on Baldinger's appeal, the Second Circuit would not have reversed, but would have affirmed the district court's judgment in favor of DeWeerth.

The Second Circuit denied without opinion the motion to recall the mandate and vacate its judgment.

Thereafter, DeWeerth moved in the district court for relief pursuant to Rules 60(b)(5) and (6) on the same grounds set forth in her motion to recall the mandate, i.e., that the New York Court of Appeals' decision required a different outcome. The district court granted DeWeerth's Rule 60(b) motion, and again ruled in her favor against Baldinger.

Baldinger appealed again. He argued that the district court lacked jurisdiction to act upon DeWeerth's Rule 60(b) motion and that, in any event, any ruling in DeWeerth's favor was precluded by the Second Circuit's denial of DeWeerth's motion for recall of its mandate. The Second Circuit rejected both of Baldinger's contentions, noting that the district court properly relied on Standard Oil Co. in entertaining and ruling on DeWeerth's Rule 60(b) motion that sought to set aside the initial ruling of the Second Circuit in favor of Baldinger. In the second appeal, the Second Circuit disagreed with the district court's ruling on the Rule 60(b) motion, but acknowledged that the district court had the authority to entertain and rule on the motion.

The court is satisfied, and concludes, that it has jurisdiction to entertain and make a ruling on defendant's Rule 60(b) motion in this action.

2.  Plaintiff's Reliance on the Entries in the Emergency Room Records of Low Back Pain as an Associated Symptom Misses the Point

Plaintiff has argued in opposition to defendant's Rule 60(b) motion that the fact that plaintiff informed the emergency room personnel of his back pain when he went to the emergency room because of his headache should be sufficient to make irrelevant the misconduct on the part of plaintiff and his attorney in withholding from defense counsel information about the reason why plaintiff went to the hospital the morning of July 15, 2013. Doc. 122 at 3-8. Plaintiff's presentation on that subject misses the point. The most relevant and related potentially relevant parts of the emergency room records are summarized below.

The most significant entries in the emergency room record are under the heading "ED Provider Notes by Kocurek, Daniel Lewis, MD at 07/15/13 0828," and the subheading "History of Present Illness," showing that the information in the history came from plaintiff, that his "Chief Complaint" was "Headache, frontal," that its "Onset/Duration of symptoms" was "Today," that it occurred at "Home," that its "Severity" was "severe," that its

20

"Time Course" was "Persisting," that the "Context of Events" was "Spont[aneous] onset," that "Associated Symptoms" were "Low back pain, sharp - similar to prev[ious]," that the "Treatments Prior to Arrival" were "None," that his "Recent Doctor Visits or Treatments" were "None," and that alongside "Similar Symptoms Previously" was the statement "Yes, dx with migraines". Hr'g Ex. 9 at 18. The doctor's notes continue on the next page with "Diagnosis," under the heading "Past Medical History," of:

> Migraine
> DJD (degenerative joint disease)
> Lumbar Pain;

and, the entry under "Past Surgical History" of "head at age 4 for injury." Id. at 19.

There were other entries mentioning back pain as well as migraine. On a different page, under the subheading "Diagnosis" below the main heading "Admission Information," the entry is "BACK PAIN, MIGRAINE," id. at 15; and, under the subheading "Past Medical History" below the main heading "Patient History," the entry is "as of 7/15/2013" was:

> DJD (degenerative joint disease)
> Lumbar pain
> Migraine,

id. at 16. Four pages further into the records are a continuation of the notes by Dr. Kocurek of the July 15, 2013

21

emergency room visit stating, under the heading "Physical Exam,"

"Mild tenderness to low back diffusely," and, under the heading

"Encounter Diagnoses":

    Headache (primary encounter diagnosis)
    Low back pain

Id. at 20.  A note by an emergency room nurse states that "Pt

states takes norco for his back pain but is currently out."  Id.

at 21.  The "RN Assessment" shows under the heading "Headache"

    Headached Location      Generalized
    Headached Pain         Aching

Id. at 24.  Lower on the same page, under the heading "Other,"

the entries are:

    Back Pain Location     Upper Lumbar
    Back Pain Character    Aching: Constant

Id.  On the page headed "Vial of Life," the entries made are:

    Past Medical History
    Diagnosis
      • DJD (degenerative joint disease)
      • Lumbar pain
      • Migraine;

and, on the same page, under the heading "Past Surgical History"

are the entries:

    Procedure
      • OTHER
        head at age 4 for injury

Id. at 29.  The emergency department discharge record showed the "Diagnoses" to be:

        Headache
        Low back pain

Id. at 33.

        Plaintiff gives special attention to the entries "BACK PAIN, MIGRAINE," under the heading "Arrival Complaint" that appears earlier on the page where Dr. Kocurek made the entries that are discussed in the second paragraph under this subheading 2.  Supra at 20-21.  There is no indication as to the qualifications or function of the person who made that entry; nor, is there any suggestion as to the relevance of the placement of the "BACK PAIN" entry ahead of the "MIGRAINE" entry.  Hr'g Ex. 9 at 18.  In contrast, the significant entries mentioned on pages 20-21 above are shown to have been made by an emergency room medical doctor based on information that plaintiff provided.

        Plaintiff failed to mention that almost immediately below the "Arrival Complaint" entry upon which he relies is an entry under the heading "ED Chief Complaint" stating under the subhead "Complaint"

        Pain-Head
        Back Pain

or the "Comment" alongside the "Back Pain" entry that "states it is chronic," or the entry immediately below that made by emergency room Dr. Kocurek under the heading "Clinical Impression" and subheading "Diagnosis":

> Headache
> Low back pain

Id.

\*  \*  \*  \*  \*

The point is not what the records disclose as a secondary, or incidental, diagnosis, but what they disclose as plaintiff's reason for going to the emergency room. They clearly disclose that the reason for his being there was a severe headache he developed at home the day he went to the emergency room, for which he received no treatment prior to his arrival at the emergency room. His medical history suggests that he had a chronic back problem that caused him discomfort, which he had learned to tolerate (see, e.g., Doc. 24 at App. 19; Doc. 79 at 39), that he mentioned while at the emergency room.

Nothing in the emergency room records suggests that he went to the emergency room because of back pain resulting from an aggravation of his back condition while he was doing his weekend tour of duty for the military. Nor is there anything in the records that would support a conclusion that the note from the

emergency room doctor upon which the Fifth Circuit relied in its
opinion had reference to any condition other than the migraine
headache condition that caused plaintiff to receive emergency
room treatment the morning of July 15, 2013.

> 3.    <u>Plaintiff, Personally and Through His Attorney, Engaged
> in Fraud, Misrepresentation, and Misconduct That Caused
> the Record of the Trial Not to Disclose the True Facts</u>

> a.    <u>Plaintiff's Pretrial Misrepresentations</u>

Contentions asserted, and actions taken, by plaintiff before
the trial set the stage for the trial conduct of plaintiff and
his counsel in creating a false trial record.    Parts of the
pretrial record pertinent to this point are as follows:

> (1)    <u>Allegations in the Complaint</u>

It started with the following allegations plaintiff made in
the Factual Background of the complaint he filed in this action
on March 11, 2014:

> In this case Mr. Hernandez awoke at approximately 7:00
> am in excruciating pain and severe cramping. Mr.
> Hernandez was assisted to his car by his wife who then
> drove him to the hospital. While in route, Mr.
> Hernandez was able to make verbal contact with his
> immediate supervisor, Vice President of Sales and
> Operations Don Thompson, at 7:28 am. Mr. Hernandez then
> informed Mr. Thompson of his medical condition and that
> he was on his way to the hospital for treatment.
>
> Mr. Hernandez was released from Texas Health
> Arlington Memorial Hospital at 10:01 AM, at which point
> his caregiver signed a letter releasing him for work
> the following day, July 16, 2013.

Doc. 1 at 2-3.

      (2)   <u>Plaintiff's Brief in Response to Motion for</u>
              <u>Summary Judgment</u>

In the brief plaintiff filed on March 2, 2015, in support of his response to defendant's motion for summary judgment, plaintiff made the following representations of fact that clearly were designed to lead the reader to think that his sole reason for going to the emergency room the morning of July 15, 2013, was to obtain care and treatment for a back injury he aggravated while serving a military tour of duty the preceding weekend:

      14. During the course of this deployment, Mr. Hernandez aggravated his existing back injury and after the telephone conversation with Mr. Thompson, Mr. Hernandez reported this to the Unit's medical readiness officer, SPC Ettayeb Mouncef, and then went into a senior staff meeting which concluded at approximately 7:30 p.m.

      15. Mr. Hernandez arrived home at approximately 12:00 a.m. on July 15, 2013, took a prescription muscle relaxant and went to bed.

      16. Around 7:00am. on the morning of July 15, 2013 Mr. Hernandez awoke in a debilitated state due to the worsening overnight of the injury he had aggravated while in service.

      17. At 7:28 a.m. Mr. Hernandez was able to get a text message to Mr. Thompson stating "Sir, I am on my way to the ER. I hurt my back yesterday. I can't stand up. I am sorry this is late but I got back really late last night from Houston."

      18. Mr. Hernandez sought treatment at Texas Health Arlington Memorial Hospital. The ER doctor evaluated the injury, prescribed more medicine, and instructed

Mr. Hernandez to rest and released him to return to work the following day.

> 19. At 10:01 a.m. Mr. Hernandez received a doctor's note stating he was treated for back pain and was released to return to work the following day.

Doc. 29 at 8, ¶¶ 14-19.[8] In that same brief, plaintiff alleged that he "informed his immediate supervisor, Mr. Thompson, at 7:28 am on July 15, 2013, via text message, that he was on his way to the hospital because of an injury he received the day before." Id. at 21.

Plaintiff also relied in support of his response to the motion for summary judgment on parts of his pretrial deposition testimony, in which he again gave misleading testimony concerning what caused him to go to the emergency room, saying:

> When I work up in the morning, my left leg was retract and locked a little bit. I could not fully extend it. I had sharp stabbing pain in my back, and that's when I had my wife take me to the emergency room in Arlington.

Doc. 30 at 5.

>        (3)    List of Facts to Be Proved at Trial

On May 8, 2015, plaintiff filed a list of facts he intended

---

[8]Undoubtedly the "doctor's note stating [plaintiff] was treated for back pain and was released to return to work the following day" was the same note to which the Fifth Circuit referred in its opinion, Hernandez, 677 F. App'x at 907, which said nothing about the doctor treating plaintiff for back pain. May 26, 2015 Trial Ex. 16.

to prove at trial, which included the following:

      22.  When Mr. Hernandez awoke on the morning of July 15th, he was in severe pain and his leg was locked up so that he could not walk unassisted.

      .  .  .  .

      23.  Mr. Hernandez was then assisted by his wife Courtney Hernandez ("Mrs. Hernandez") in getting dressed and then getting to the car to travel to the Emergency Room.

      .  .  .  .

      25.  Hernandez sent a text message to Mr. Thompson at 7:28 a.m. on July 15, 2013, stating "Sir, I am on my way to the ER. I hurt my back yesterday. I can't stand up. I am sorry this late but I got back really late last night from Houston."

      .  .  .  .

      26.  Hernandez was treated at Texas Health Arlington Memorial Hospital on July 15, 2013 for the aggravation of his pre-existing back injury as a result of the strenuous physical activity of his drill weekend.

      .  .  .  .

      27.  While at the hospital Mr. Hernandez was administered heavy muscle relaxers and pain medication which made him drowsy and inebriated[.]

Doc. 52 at 9-11, ¶¶ 22, 23, 25, 26, & 27.

### (4)  Plaintiff's Pretrial Brief

In a pretrial brief he filed on May 18, 2015, plaintiff

included the following in his Brief Factual Summary:

> When Mr. Hernandez awoke at approximately 7:00 am
> he was in crippling pain unable to walk independently
> as one of his legs was locked up.  His wife, Courtney
> Hernandez (Mrs. Hernandez), helped him to the car and
> drove him to the emergency room.  At 7:28 am Mr.
> Hernandez was able to text Mr. Thompson "Sir, I am on
> my way to the ER. I hurt my back yesterday. I can't
> stand up...."  Mr. Hernandez as [sic] given a cocktail
> of muscle relaxers and pain medication and released
> from the hospital at approximately 10:00 am.

Doc. 55 at 6.

### (5)  Plaintiff's Discovery Violations

The discovery violations of plaintiff, through his counsel,

have previously been discussed at pages 9-10 of this memorandum

opinion and order.  Even though the hospital records were subject

to plaintiff's control inasmuch as all he had to do to obtain

them was to request them, he made no disclosure in his response

to the pointed request for production that would give a clue to

opposing counsel and her staff that the records requested

consisted of more than the July 15, 2013 letter.  Even if

plaintiff thought he legitimately could decline to produce the

full set of medical records, a proper response to the request for

production would have been to explain that he was not producing

all of the records, and to tender with his response to the

production request an authorization for defendant to obtain a complete set of the records.  As it was, the discovery response was incomplete and misleading.  An even more egregious violation of plaintiff's discovery obligation was his failure to supplement his request for production after plaintiff's counsel received almost two weeks prior to trial copies of the emergency room records disclosing the real reason why plaintiff went to the emergency room on July 15, 2013.  <u>See</u> Rule 26(e) of the Federal Rules of Civil Procedure.

* * * * *

In none of plaintiff's many pretrial filings did he disclose that his reason for going to the emergency room the morning of July 15, 2013, was for treatment of a headache he developed that morning while at home.  He personally knew the truth.  His repeated false assertions undoubtedly had an influence on the decision of trial counsel for plaintiff not to pursue further discovery concerning the July 15, 2013 emergency room visit and to take at face value the incomplete and misleading answer to defendant's discovery request on that subject.

  b.  <u>Plaintiff's Misleading and Inaccurate Trial Testimony</u>

The trial testimony for plaintiff brought into the trial record the same kinds of misleading and deceptive information

plaintiff used during pretrial concerning plaintiff's July 15, 2013 emergency room visit.

Plaintiff's first witness was his wife.  She testified that when she awoke at around 6:30 a.m. the morning of July 15, 2013, plaintiff, who was in the bed next to her, was crying and his left leg was locked up.  Doc. 79 at 17.  Once she realized that his leg was locked up, she dressed, got plaintiff dressed, assisted plaintiff to the vehicle, and took him to the emergency room at Arlington Memorial Hospital.  Id. at 17-18.  They left the house at about 7:00 a.m.  Id. at 18.  When asked if plaintiff indicated to her that morning that he had aggravated his back, she responded "[h]e aggravated his back at drill."  Id.  She said plaintiff was admitted to the emergency room, where he was administered muscle relaxers and pain killer while she was in the room with him.  Id.

Next, plaintiff testified.  He told of injuring his back while deployed in Iraq in 2004, and said that he had re-injured or aggravated it multiple times.  Id. at 25.  He testified that he re-injured his back sometime around noon on Sunday, July 14, 2013, when he felt a slight aggravation.  Id. at 37-38.  He explained what he meant by "slight aggravation," saying:

> THE WITNESS: I constantly have dealt with various
> different levels of pain in my back, depending on the

31

type of work that I do.  Sometimes it feels like
arthritis, just achy pain, and sometimes it feels like
a stabbing knife wound in my back, and at the time I
felt that it was more of an aching pain.

Id. at 38.

Plaintiff described what caused him to go to the emergency

room the morning of July 15, 2013, by saying:

Q (BY MR. RAY) And can you briefly describe the
state you were in when you woke up on the morning of
July 15th?

A. I woke up, and I was in severe pain.  My left
leg was locked at a 90-degree angle.  I had a stabbing
sensation in the lower left side of my back.  I was
crying.  I was wincing.  At times, it was difficult to
breathe.

Id. at 42.  He said that he sent a text message to defendant at

7:28 a.m. informing defendant that he was on his way to the

emergency room, and that he had hurt his back the day before and

could not stand up.  Id. at 43.  He then described what happened

at the emergency room, saying:

Q (BY MR. RAY) Please describe what happened at
the hospital on the morning of the 15th.

A. I was admitted into the ER.  I had to tell them
my brief history of my back injury, and which doctor I
was seeing, and what medication I was on.  They then
gave me a muscle relaxer and pain killer.  They
monitored me to wait to see how long it would take my
leg to unlock, and I was also given an IV.

Q. Did they say what the IV was for?

32

> *A.* They said that due to my vital signs, they believed I was also slightly dehydrated, and they did it as a precautionary reason.

Id. at 44.

He explained the note he received from the doctor [the one the Fifth Circuit referred to in its opinion], by saying "[w]e had asked them for it as soon as we got admitted into the hospital because I knew I would need it," and "[t]hey printed it off then, but [he] did not receive it until [he] was discharged from the hospital around noon." Id. at 50. The doctor whose name appears on the note was an emergency room doctor. Id.

At no time during the trial was there any mention that plaintiff's real reason for going to the emergency room the morning of July 15, 2013, was for treatment of a headache he first developed that morning while at home.

c.   Plaintiff's Misrepresentations to the Fifth Circuit

Plaintiff continued his pattern of misrepresentation of his reason for going to the emergency room the morning of July 15, 2013, in his appellate briefs filed with the Fifth Circuit in his appeal from this court's judgment adverse to him. On page 5 of

33

his opening brief, plaintiff made the following representations

of fact to the Fifth Circuit:

> When Mr. Hernandez awoke at approximately 7:00
> a.m., he was in crippling pain. He was unable to walk
> independently as one of his legs was locked up.
> (ROA.551.) His wife, Courtney Hernandez (Mrs.
> Hernandez), helped him to the car and drove him to the
> emergency room. (ROA.527.552.) At 7:28 a.m., Mr.
> Hernandez was able to text Mr. Thompson "Sir, I am on
> my way to the ER. I hurt my back yesterday. I can't
> stand up. . . ." (ROA.552.742-43.748.) Mr. Hernandez
> was given a cocktail of muscle relaxers and pain
> medication and released from the hospital at
> approximately 10:00 a.m. (ROA.527.553.737.)

5th Cir. Case No. 15-10602, Orig. Br. for the Appellant Jose Luis

Hernandez at 5. He made essentially the same factual

representations on page 13. At page 14, plaintiff represented to

the Fifth Circuit that:

> The facts before the court established that Mr.
> Hernandez could not have reported on July 15, 2013
> because the service-related aggravation of his injury
> prevented him from doing so. Even if he had been
> required to report on July 15, he was excused from
> reporting by the plain language of § 4312(e)(2)(A)
> because he was "convalescing from, an ... injury ...
> aggravated during, the performance of service" and was
> not required to report to work until "the end of the
> period that [was] necessary for" his recovery. Failing
> to reemploy Mr. Hernandez after his period of
> convalescence therefore violated § 4312(e)(2)(A).

Id. at 14.

Nothing in the written or verbal presentations made on

behalf of plaintiff to the Fifth Circuit made any disclosure

concerning the headache he experienced the morning of July 15, 2013, and the role it played in his emergency room admission that morning.

\* \* \* \* \*

For the reasons discussed above, the court finds by clear and convincing evidence that plaintiff, often through his attorney, engaged in fraud, misrepresentation, and misconduct in plaintiff's presentations, verbally and in writing, to the court in pretrial matters, during the trial, and in his presentations to the Fifth Circuit in support of his appeal from this court's dismissal of his claims. As a consequence, the trial court record was false in that it failed to disclose plaintiff's true reasons for his visit to the hospital emergency room the morning of July 15, 2013, and the Fifth Circuit was presented with a false record and false arguments by plaintiff, through his counsel, on that subject.

4.    Defendant Was Denied a Full and Fair Opportunity to Present its Defense

The court finds by clear and convincing evidence that if defendant had been provided the emergency room records plaintiff, through his counsel, had in his possession before the trial commenced, and if plaintiff and his wife had testified truthfully at trial, defendant would have been able to more fully and fairly

35

present its defense to plaintiff's claim that during the day of July 15, 2013, he was convalescing from an aggravation he suffered over the preceding weekend of a preexisting back condition.  If the truth concerning plaintiff's reason for admission to the hospital had been disclosed during or before the trial, defendant would have been in a position to effectively argue that plaintiff's failure to be at work the morning of July 15, 2013, was not the result of any military-related injury, or aggravation of an injury, and that during the day of July 15, 2013, plaintiff was not convalescing from such an injury or aggravation.

As it was, defendant was in a position that its counsel had no choice but to assume the correctness of the false presentations of plaintiff that his emergency room visit, and his absence from work on July 15, 2013, were caused by such an injury or aggravation.  Had the truth been disclosed at trial, defendant's appellate counsel would have been in a position to respond to Circuit Judge Elrod's question, supra at 5 n.2, that there was evidence that directly rebutted plaintiff's claim that he went to the hospital the morning of July 15, 2013, for treatment for an aggravated injury to his back; and, if the truth had been disclosed at the trial, the Fifth Circuit would not have

issued an opinion indicating that it was undisputed that the
convalescence plaintiff was experiencing during the day on
July 15, 2013, was related to an aggravation he suffered over the
weekend of a chronic back problem.

The court is satisfied that defendant, through counsel,
probably could have obtained the emergency room records from the
hospital through the authorization that her office had acquired
from Mr. Ray. Her explanation for the failure of her office to
seek the records was that she was aware that plaintiff's counsel
had produced a record in response to defendant's discovery
request directed to plaintiff, and she did not have a reason to
believe that the record that was produced was not all that was
available. Doc. 147 at 58-59. At another point, she testified
"[w]e believed that Mr. Ray had provided us the documents that we
had requested and didn't have any reason to think otherwise, so
we didn't request additional documents." Id. at 64. She
expressed the belief that the failure of plaintiff's counsel to
produce the emergency room records prevented her from fully and
fairly presenting her case. Id. at 65.

When defendant's appellate counsel was called to the stand,
he further explained why a lawyer might well accept the existence
of a letter from a treating doctor to be the entire record of an

37

emergency room visit if the person was not admitted to the hospital.  Id. at 89.

Near the conclusion of the June 12, 2017 hearing on defendant's motion, the court commented that "[t]he defendant could have gotten the records, and I can assure you that 90 percent of the lawyers would have gotten the records."  Id. at 168.  The court's comments were based on the judge's personal experience as a trial attorney practicing, for the most part, in state court for over thirty years ending in the 1980s.  Upon reflection, the court realizes that the litigation environment in which he was operating at that time is not the same as the litigation environment that now exists in this court, particularly since the issuance by this court of its en banc decision in Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n, 121 F.R.D. 284 (N.D. Tex. 1988).  That decision has almost eliminated inappropriate litigation conduct by attorneys, particularly in relation to discovery matters.[9]

_____

[9]The undersigned has had only one experience of a discovery violation remotely similar to plaintiff's violation in the instant action, and it occurred shortly after the undersigned took the bench, and it resulted in serious sanctions against the offending party and its attorney, which were affirmed on appeal in Chilcutt v. United States, 4 F.3d 1313 (5th Cir. 1993).  The court attributes the lack of other discovery violations of that kind to Dondi and the message conveyed to the members of the Bar by Chilcutt.

Though many attorneys would not have accepted plaintiff's discovery response related to the emergency room records, the court has decided that it cannot find fault with defendant's trial counsel in assuming that plaintiff's counsel was being candid and honest in his discovery response (when he, without qualification, produced the letter from the emergency room physician as being the record in his client's care, custody, or control related to plaintiff's July 15, 2013 emergency room visit). The court, therefore, concludes that defendant, through counsel, exercised an appropriate level of diligence in seeking through discovery information pertaining to the emergency room visit. Particularly is that so when one considers the repeated unqualified assertions made by plaintiff, often through counsel, in advance of trial that the purpose of the visit was for treatment of aggravation of a back injury.

The request for production in response to which the emergency room records should have been produced called for "[a]ll documents related to any visits Plaintiff had with civilian medical personnel in July 2013, including all documents related to Plaintiff's visit to the hospital on July 15, 2013, as alleged in Plaintiff's Petition." June 12, 2017 Mot. Hr'g, Def.'s Ex. 3 at 14. Plaintiff's response was "[e]xhibit 17 Texas Health

Arlington Memorial Hospital Letter 7/15/2013." Id. Plaintiff
generally represented in his response document that "documents
responsive to this request in the possession, custody and control
of the Plaintiff are attached as Exhibits in response to the
Defendant's written discovery requests," below which
representation Exhibit 17 was listed as "TX Health Arlington
Physician Confirmation." Id. (emphasis added). The word
"control," when used in a discovery sense, includes the legal
right, authority, or ability of a party responding to discovery
to obtain documents on demand. See Searock v. Stripling, 736
F.2d 650, 653 (11th Cir. 1984); see also Cochran Consulting, Inc.
v. Uwatec USA, Inc., 102 F.3d 1224, 1229-30 (Fed. Cir. 1996);
Allen v. Greystar Mgmt. Servs. L.P., No. SA-09-CA-00122-XR, 2009
WL 10669156 at *3-4 (W.D. Tex. Aug. 27, 2009). Plaintiff's
discovery response, in effect, told defense counsel that the
doctor's letter constituted the only emergency record plaintiff
had the ability to obtain from the hospital.

Defendant's trial counsel was entitled to accept at face
value the representation by plaintiff and his counsel that
plaintiff complied with his discovery obligation under the
Federal Rules of Civil Procedure to produce in response to the

discovery request all records that were in his control pertaining
to his emergency room visit.

     5.   <u>Defendant Would Be Entitled to Relief Under Rule
60(b)(6) Were it Not for its Entitlement to Relief
under Rule 60(b)(3)</u>

The court has concluded that defendant is entitled to the
relief it seeks under the provisions of Rule 60(b)(3). Were that
not so, defendant would be entitled to the relief it seeks
pursuant to the authority of Rule 60(b)(6). The facts discussed
above provide sufficient reason for granting Rule 60(b)(6) relief
from the Fifth Circuit's judgment in plaintiff's appeal. The use
of false information concerning his emergency room admission
before and during the trial and then leading up to and playing a
role in the Fifth Circuit's decision to reverse the trial court
judgment, and the failure of plaintiff and his counsel to comply
with their discovery obligations relative to the records of the
emergency room, provide exceptional and extraordinary
circumstances of the kind that would cause Rule 60(b)(6) relief
to be appropriate.

B.   <u>Inconsistent Testimony of Plaintiff That Bears on His
Credibility</u>

On May 1, 2017, plaintiff provided an affidavit to be used
in opposition to defendant's motion under consideration in which
he stated that "[t]o the best of my recollection I have never

been diagnosed with Migraine Headaches and I did not indicate to anyone at Arlington Memorial Hospital that I had been previously diagnosed with Migraine Headaches." Doc. 123, Ex. B at 2, ¶ 3. And, at the June 12, 2017 hearing on the motion, he gave the following testimony:

> Q. [BY MR. RAY] To your knowledge, have you ever been diagnosed with migraine headaches?
>
> A.   No, sir.
>
> Q.   So do you believe it is an error in the hospital records that reflects that you have been previously diagnosed with migraine headaches?
>
> A.   Yes.
>
> Q.   Have you ever had -- have you ever sought treatment at a hospital for a headache?
>
> A.   No, I don't believe so.  I can't recall any specific incident.  Is it quite possible when I was a kid did my mother ever take me in because I had a headache?  Possibly.

Doc. 147 at 138.  When cross-examined, he was asked if he had migraines from time to time, and he responded: "[n]ot what I'm understanding what a migraine is." <u>Id.</u> at 142.  He then unqualifiedly answered that he does not get migraines from time to time.  <u>Id.</u> at 143.  He denied that he "had been treated by other doctors for migraines here and there."  <u>Id.</u> at 145.

His April 13, 2017 deposition testimony was significantly different from his hearing testimony.  His answer when asked

about the entry in the emergency room records that he had been previously diagnosed with migraines was that he "had been treating [sic] other hospitals and other doctors for migraines here and there." June 12, 2017 Mot. Hr'g, Def.'s Ex. 8 at 219. When asked if he told the emergency room personnel on July 15, 2013, that he was having a migraine, he answered:

> A. I probably could have as well. I get them from time to time. So if I had one then, I probably would have told them.

June 12, 2017 Mot. Hr'g, Def.'s Ex. 8 at 205.

When later he was asked why he had previously testified that he had never told anyone that he went to the emergency room with a headache, he said that his denial was because "that wasn't [his] chief complaint," and that he "can deal with headache" but "if they ask me what all is wrong with me, I'm not going to lie to a doctor" and "I'm going to tell them, I've got a headache." Id. at 207. He then said he could not remember telling the emergency room personnel that he had a headache, but added that "it's very quite possible that I did have a headache and I told them, but I don't -- I don't remember that," and he added that he probably does not remember "the headache because my chief complaint was the back pain." Id. at 208.

43

The foregoing provide examples of why the court questioned the credibility of plaintiff's testimony.  The impression the court gained was that plaintiff often gave whatever testimony, no matter how false, he thought would serve his purposes.

A minor, but nonetheless potentially significant, apparent discrepancy in plaintiff's testimony relative to his emergency room visit has to do with the circumstances that led to his receipt of the physician's note that the Fifth Circuit mentioned in its opinion. As noted earlier in this opinion, supra at 33, plaintiff testified at the trial that as soon as they got admitted into the hospital he asked for the doctor's note "because [he] knew [he] would need it," and "[t]hey printed it off then, but [he] did not receive it until [he] was discharged from the hospital around noon."  Doc. 79 at 50.  In contrast, in his post-appeal deposition he testified in reference to the note that he received it from one of the nurses at the check-out, check-in desk, when the nurse asked him if he needed a note or something, and he said yes. June 12, 2017 Mot. Hr'g, Def.'s Ex. 8 at 210.  He said "[o]ne of the nurses handed it to me" and "[t]hey asked me if I needed a note or something and I said yes." Id. at 211-12.  While one might view his different versions as possibly consistent, the court notes that his initial, trial,

44

version suggests that when plaintiff and his wife went to the

emergency room they already had something of a plan as to the use

that might be made of the emergency room visit, bearing in mind

that plaintiff had overslept and did not awaken until

approximately two hours after he was scheduled to be at work for

defendant that morning.

C.    The Court Has Concluded That Defendant's Rule 60(b) Motion
      Should Be Granted

While the grant of defendant's Rule 60(b) motion based on

Rule 60(b)(6) would be appropriate, the court has concluded that

the more appropriate ruling would be for the court to grant

defendant's motion based on Rule 60(b)(3).  The facts on which

the court relies in granting the motion, as recited above, have

been established by clear and convincing evidence.  The motion is

timely, having been filed within a reasonable time, and less than

a year after the entry by the Fifth Circuit of its opinion and

judgment in favor of plaintiff, and remanding for further

proceedings.

Plaintiff's false trial testimony and the withholding by

plaintiff from defendant of the emergency room records even

though defendant had pointedly requested them in its request for

production of documents totally disrupted the truth-seeking

objective of the trial and, then, of the appeal from the trial

45

court's judgment.  As the Fifth Circuit noted in <u>Rozier v. Ford
Motor Co.</u>, 573 F.2d 1332, 1345 (5th Cir. 1978), our system of
civil litigation cannot function if parties suppress information
called for upon discovery because mutual knowledge of all the
relevant facts gathered by both parties is essential to proper
litigation.  "To that end, either party may compel the other to
disgorge whatever facts he has in his possession."  <u>Id.</u> (omitting
internal quotation mark and citation).

As happened in <u>Rozier</u>, plaintiff and his counsel engaged in
misconduct in this case that "completely sabotaged the federal
trial machinery, precluding the 'fair contest' which the Federal
Rules of Civil Procedure are intended to assure."  <u>Id.</u> at 1346.
And, as in <u>Rozier</u>, "[i]nstead of serving as a vehicle for
ascertainment of the truth, the trial in this case accomplished
little more than the adjudication of a hypothetical fact
situation imposed by [plaintiff's] selective disclosure of
information," <u>id.</u>, so that "[t]he policy protecting the finality
of judgments is not so broad as to require protection of
judgments obtained in this manner."  <u>Id.</u>  Undoubtedly this is
why, as the Fifth Circuit has said, Rule 60(b)(3) "is remedial
and should be liberally construed."  <u>Id.</u> (international quotation
marks and citation omitted).  "[T]he policy of deterring

46

discovery abuses which assault the fairness and integrity of litigation must be accorded precedence over the policy of putting an end to litigation." <u>Id.</u>

The court finds by clear and convincing evidence that plaintiff and his counsel pursued an unconscionable plan or scheme which was designed to improperly influence this court in its decision, and then the Fifth Circuit in its decision. <u>See</u>, <u>id.</u>, at 1338.

The court has found from clear and convincing evidence that the judgment of the Fifth Circuit was obtained through fraud, misrepresentation, or other misconduct on the part of plaintiff and his counsel. Their inappropriate conduct led to the trial record that caused the Fifth Circuit to make the ruling it did in favor of plaintiff. The court finds from clear and convincing evidence that the conduct of plaintiff and his counsel prevented defendant from fully and fairly presenting its defense at trial, which, in turn, prevented the Fifth Circuit from having a full, complete, and honest record upon which to base its decision.

As the Fifth Circuit explained in <u>Rozier</u>:

> Although Rule 60(b)(3) applies to misconduct in
> withholding information called for by discovery, it
> does not require that the information withheld be of
> such nature as to alter the result in the case. This
> subsection of the Rule is aimed at judgments which were

47

unfairly obtained, not at those which are factually
incorrect.

Id. at 1339 (citations omitted). While this court's judgment
following trial favored defendant, the improper conduct of
plaintiff and his counsel caused the trial record to contain
false information, with the result that the Fifth Circuit's
judgment for plaintiff was based on a record that was unfairly
created. Id.

The fact that defendant could probably have obtained the
emergency room records through its own resources prior to trial
is not dispositive if the Rule 60(b) movant was prevented by
plaintiff's misrepresentations and inappropriate non-disclosures
from fully and fairly presenting its case. See, id. at 1342.

The Diaz v. Methodist Hospital case, 46 F.3d 492 (5th Cir.
1995), opinion upon which plaintiff bases his argument that the
possibility that defendant could have obtained the emergency room
records by its own resources should prevent the grant of the Rule
60(b) motion is misplaced. In Diaz, the Fifth Circuit affirmed
the trial court's decision to deny a Rule 60(b)(3) motion, and
the Fifth Circuit took into account in affirming that denial the
ease with which the movant could have obtained the information he
claimed was improperly withheld by his opponent. Nothing in Diaz
suggests that circumstances cannot exist that would authorize a

court to grant such a motion even though the movant could have obtained withheld information through his own resources.  In Diaz, the Fifth Circuit noted that "[t]he decision to relieve a party from final judgment is within the sound discretion of the trial court."  Id. at 496.

In the instant action, the court is exercising its discretion to grant defendant its requested Rule 60(b)(3) relief because of the unique circumstances that led to defendant's failure before or during the trial or before or during the appeal to obtain the truth about plaintiff's reason for going to the emergency room on July 15, 2013.  Plaintiff's repeated false representations in advance of trial, supra at 25-30, lulled defendant into a reasonable acceptance of plaintiff's contention that his July 15, 2013 trip to the emergency room was for treatment of an injury to his back that was aggravated during the performance of his military duties over the preceding weekend. Those false representations to defendant were fortified by the deceptive, indeed false, response to defendant's request for production of documents pertaining to the emergency room visit. The court is satisfied, and finds, that, under the circumstances, defendant and its counsel reasonably did not pursue their own resources in an attempt to obtain copies of the emergency room

records.  Considering the litigation atmosphere in the Northern District of Texas, defendant's counsel was appropriately relying on the integrity of opposing counsel in deciding that nothing would be gained by the additional expense that would be incurred by seeking copies of the emergency room records directly from the hospital.

Nothing occurred during or after the trial to cause the situation to change before the Fifth Circuit made its reversal and remand rulings.  Instead, the false testimony given by plaintiff and his wife at trial concerning the reason why plaintiff went to the emergency room had the goal of fortifying, and undoubtedly did fortify, the belief by defendant that defendant would have nothing to gain by using its resources to acquire the emergency room records.

For the reasons stated above, the court is granting plaintiff's Rule 60(b) motion under the authority of Rule 60(b)(3).

VI.

Future Actions to Be Taken by this Court

The court plans by a separate order to define the future actions the court will take in the light of the ruling that is being made by this order, including the actions to be taken by

50

the court under the authority of Rule 37(c) of the Federal Rules
of Civil Procedure by reason of the discovery abuses of plaintiff
and his counsel.  In the meantime, the court is including in the
order that is a part of this memorandum opinion and order a
certification for an interlocutory appeal as contemplated by
28 U.S.C. § 1292.

VII.

Order

For the reasons stated above,

The court ORDERS that defendant's motion for relief from
judgment be, and is hereby, granted under the authority of
Rule 60(b)(3) of the Federal Rules of Civil Procedure; and,

The court further ORDERS that defendant is relieved of the
Fifth Circuit's adverse rulings against defendant in its opinion
and judgment of January 30, 2017, in its Case No. 15-10602,
styled "Jose Luis Hernandez, Plaintiff-Appellant, v. Results
Staffing, Incorporated, Defendant-Appellee," which judgment was
issued by the Fifth Circuit as the mandate in such appeal on
February 22, 2017.

* * * * *

As contemplated by 28 U.S.C. § 1292(b), the court here makes
known its opinion that the foregoing orders involve a controlling

51

question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of this litigation.  Plaintiff has maintained that this court should not grant Rule 60(b) relief to defendant due to the fact that defendant probably could have obtained the truth about plaintiff's July 15, 2013 emergency room admission by its own resources in advance of trial, citing as authority for that proposition Diaz v. Methodist Hospital, 46 F.3d 492 (5th Cir. 1995).  Doc. 148 at 15-16; Doc. 151 at 2, 6.  Plaintiff also cites in support of his position Williams v. Thaler, 602 F.3d 291 (5th Cir. 2010).  Doc. 151 at 6.  Another Fifth Circuit opinion that arguably supports plaintiff's position is Government Financial Services One Ltd. Partnership v. Peyton Place, Inc., 62 F.3d 767, 772-73 (5th Cir. 1995).  On the other hand, this court has been persuaded that the facts of this case are distinguishable from the Diaz, Williams, and Government Financial facts.  Here, the misrepresentations and discovery abuses of plaintiff and his counsel were so egregious that, considering the litigation environment in the Northern District of Texas, counsel for defendant reasonably forwent the opportunity defendant had to seek the truth by its own resources.

Plaintiff is informed that if he wishes to avail himself of the opportunity he has under 28 U.S.C. § 1292(b) to seek an interlocutory appeal, he must make an application therefor within ten days after the entry of this memorandum opinion and order.

SIGNED September 1, 2017.

_____
JOHN McBRYDE
United States District Judge