

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSE LUIS HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:14-CV-182-A |
| | § | |
| RESULTS STAFFING, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION
### and
### ORDER

Before the court for consideration and ruling is the request for relief made by plaintiff, Jose Luis Hernandez ("Hernandez"), in the document he filed January 3, 2019, titled "Plaintiff's Motion for Reconsideration of an Interlocutory Order Pursuant to Fed. R. Civ. P. 54(B) and Brief in Support." Doc. 172.[1] After having considered such motion, the other documents filed by the parties related thereto, and the entire record of the above-captioned action, the court has concluded that such motion should be denied.

---

[1] The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:14-CV-182-A.

I.

## The Ground of the Motion

Hernandez describes the ground of his motion in its introduction as follows:

> Mr. Hernandez files this Motion for Reconsideration of the Order pursuant to Federal Rule of Civil Procedure 54(b), asserting that <u>the Court's interpretation of the medical records in question constitutes "manifest error"</u> and that the Court should consider new evidence relevant to the interpretation of those records.

Doc. 172 at 1 (emphasis added).

The part of Rule 54(b) upon which Hernandez relies is the language that "any order or other decision . . . that adjudicates fewer than all the claims . . . does not end the action as to any of the claims . . . and may be revised at any time <u>before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities</u>." Fed. R. Civ. P. 54(b) (emphasis added); Doc. 172 at 2. The ruling Hernandez asks the court to set aside is this court's September 1, 2017 ruling that relieved defendant, Results Staffing, Inc. ("Results"), of the Fifth Circuit's January 30, 2017 reversal of the judgment entered by this court on May 26, 2015, in favor of Results.

2

II.

## Hernandez's Motion Is Without Merit

As noted above, Hernandez seeks to invoke the provisions of Rule 54(b) on the ground that this court's "interpretation of the medical records in question constitutes 'manifest error' and that the Court should consider new evidence relevant to the interpretation of those records. Doc. 172 at 1. The Fifth Circuit has defined a "[m]anifest error as "one that is plain and indisputable, and that amounts to a complete disregard of the controlling law." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004)(citing, inter alia, Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004)). This court earlier defined it as "an obvious mistake or departure from the truth." Bank One, Texas, N.A. v. F.D.I.C., 16 F. Supp. 2d 698, 713 (N.D. Tex 1998)(Fitzwater, J.).

The court is satisfied from the contents of Hernandez's motion and all of the related items that have been filed in this action in support of or in opposition to the motion, that the court did not commit any kind of error, much less a manifest error, in the interpretation of the medical records in question, and that the affidavit of Daniel Lewis Kocurek, M.D. ("Kocurek") does not provide any reason for the court to reconsider its September 1, 2017 rulings. Rather, for reasons discussed below,

3

the court questions the good faith and honesty of Hernandez and counsel for Hernandez, Ryan E. Ray ("Ray"), in requiring the court to devote the court's time and attention to the motion for reconsideration.

A.  Hernandez's Motion Begins With a Questionable Representation of Fact

Hernandez seeks to explain the untimeliness of his motion by the implied representation on its first page suggesting that only recently he "has been able to locate the attending physician, Daniel Lewis Kocurek, M.D.   . . . , who treated Mr. Hernandez on the day in question."[2] Doc. 172 at 1. The filings that have been made by the parties since the motion for reconsideration was filed demonstrate just how misleading that statement is. Hernandez failed to make mention in his motion of any personal relationship between Ray and Kocurek. Had the motion been candid, it would have disclosed a six-year relationship between Ray and Kocurek. Instead, that disclosure was first made in response to orders of the court and at the insistence of counsel for Results. Doc. 180 at App. 004; Doc. 181 at 2-3; and Doc. 186 at 1-3. It took the second order

---

[2]Hernandez and Ray made the same misleading representation in a document Ray filed December 11, 2018, in opposition to Results's motion for sanctions, saying in that document that "Mr. Hernandez has been able to locate the attending physician Daniel Lewis Kocurek, MD . . . who treated Mr. Hernandez on the day in question . . . ." Doc. 169 at 1, § I.

4

to cause the full length of the relationship to appear of record. Doc. 186 at 1-3.

The filings disclose that starting as early as at least May 20, 2013, Ray has had a relationship with Kocurek. Doc. 188 at App. 049. By the time Ray obtained Kocurek's affidavit, they were on a first-name/nickname basis. Doc. 180 at App. 008 (Kocurek signed "Danny"); doc. 185 at App. 005 (Kocurek is "Mr. Wonderful"); id. at App. 006 (Ray addresses Kocurek twice as "Mr. Wonderful," and Kocurek responds as "Mr. Wonderful"). On May 20, 2013, Ray and Kocurek entered into a Property Tax Representation Agreement. Doc. 188 at App. 049. Ray provided legal representation to Kocurek and his wife by successfully obtaining a reduction in the taxable value of their residence for the year 2013, id. at App. 050, 052-053, and Ray sent a bill for payment of services rendered to Kocurek at his residence address, id. at App. 056. Ray's representation of Kocurek continued into the year 2014, id. at App. 050-051, 056-057, and was repeated during the years 2015, id. at App. 060, 2016, id. at App. 061, 2017, id. at App. 062, and 2018, id. at App. 067. In April 2018, Ray signed a legal document on behalf of Kocurek, as his "authorized agent." Id. at App. 067.

Ray has known Kocurek's residence address in Arlington, Texas, and his home telephone number since no later than May 20,

5

2013. Id. at App. 049 & 050. That telephone number is the same number Ray said he used to call Kocurek on November 27, 2018, to arrange for Kocurek to help him in this litigation. Id. at App. 001, ¶ 1.

The record of this action establishes that Ray saw the records of Hernandez's July 15, 2013 emergency room visit no later than May 13, 2015. Doc. 113 at App. 041-042, 125-126. That is when he would have known that those records showed that Kocurek made the following entries on the records from Hernandez's visit to the hospital the morning of July 15, 2013:

> HPI Comments: History of Present Illness:
>
> Historian: Patient.
>
> Chief Complaint: Headache, frontal
> Onset/Duration of symptoms: Today
> Where did it Occur: Home
> Severity: severe.
> Time Course: Persisting.
> Context of Events: Spont onset
> Worsened by: nothing
> Improved by: nothing
> Associated Symptoms: Low back pain, sharp - similar to prev
> Treatments Prior to Arrival: None
> Sick Contacts: None
> Recent Doctor Visits or Treatments: None
> Similar Symptoms Previously: Yes, dx with migraines

Doc. 113 at App. 011.

Of particular interest is the fact that Ray undertook representation of Kocurek no later than May 20, 2013, only fifty-five days before Hernandez went to the emergency room the morning

6

of July 15, 2013.  Doc. 188 at App. 049.  Ray knew on May 13, 2015, that the medical records directly contradicted the sworn testimony that Hernandez and his wife had repeatedly given and the representations Ray had made to the court in filings in this action.  One might reasonably ask why Ray did not discuss that matter with Kocurek before the trial of this action started on May 26, 2015.  Or, perhaps more to the point, did Ray, without disclosing the matter to the court or opposing counsel, have such a discussion?  Perhaps of greater interest, why would Ray call Kocurek for the first time, as Ray claims, on November 27, 2018, for the purpose of discussing an affidavit that might be used to extricate Hernandez and Ray from the results of their false, fraudulent, and wrongful conduct?  Doc. 188 at App. 001, ¶ 1.  The logical conclusion is that Ray must have had, at a much earlier date, contact with Kocurek about the medical records, but failed to pursue the matter further at that time because of the unsatisfactoriness of Kocurek's response.  Undoubtedly, Ray's relationship with Kocurek had not sufficiently warmed until recently for Ray to request of Kocurek that he sign an affidavit of the kind on which the motion for reconsideration is based.

If Hernandez or Ray had any question as to the accuracy of the July 15, 2013 records of Hernandez's emergency room visit, they surely would have taken action to prove that inaccuracy or

7

to correct those records before this case went to trial on May 26, 2015, or during that trial. Certainly they would have done so in response to the Rule 60(b) motion Results filed April 27, 2017, or, if not then, surely before the court heard the Rule 60(b) motion on June 12, 2017. Or at least they would have done so by having Kocurek testify at that hearing or, surely they would have done so before this court ruled on the Rule 60(b) motion, and most certainly before this court granted that motion by the order issued September 1, 2017.

Hernandez and Ray are correct in thinking that they must provide an explanation as to why at this late date they are advocating a recent affidavit from Kocurek as a reason why this court and the Fifth Circuit should not have given effect to the plain words of the hospital records pertaining to Hernandez's July 15, 2013 emergency room visit, bearing in mind that Hernandez and Ray have known of the existence of those records and their contents since May 13, 2015. Hernandez and Ray undoubtedly knew that they would have no chance of prevailing on a Rule 54(b) motion if Ray were unable to persuade this court that they could not have provided information from Kocurek in support of Hernandez's position at or before any of the stages of the litigation mentioned in the immediately preceding paragraph.

8

That undoubtedly explains their pretense that they finally have been able to locate Kocurek.

The court's comments in this section are not speculation, but constitute the most reasonable inferences that can be drawn from the established facts.

The delay in presenting Kocurek's affidavit and the circumstances surrounding the relationship between Ray and Kocurek cause the affidavit to lack any credibility, even if it were facially sensible and probative, which it is not.

For the reasons discussed under this heading, the court does not consider that the Kocurek affidavit is new evidence that assists the court in the interpretation of the hospital records. The affidavit does not cause the court to believe that the court's interpretation of the hospital records constituted manifest error. For those reasons, without more, the court concludes that Hernandez's motion for reconsideration should be denied.

B.  Other Reasons Why Hernandez's Motion Should Be Denied

Under this heading, the court briefly discusses other reasons why Hernandez's motion pursuant to Rule 54(b) should be denied, some of which were advanced by Results in its responsive documents.

9

1.  <u>The Affidavit is Facially Incredible and Non-Probative</u>

The Kocurek affidavit does not provide anything new to this litigation other than to disclose further deceptiveness on the part of Hernandez and Ray and the willingness of Kocurek to join them in their deceptions. All the Kocurek affidavit really does is attempt to make the point that a close study of the hospital records of Hernandez's July 15, 2013 emergency room visit can be interpreted as supporting Hernandez's version of the purpose of the visit, <u>i.e.</u>, for treatment of a back injury that was aggravated during his military service of the preceding weekend. That is nothing new to this case.

In Hernandez's initial memorandum in opposition to Results's motion for relief under Rule 60(b), he argued that the hospital records supported his position that he was there because of a back injury he suffered while doing military duty over the preceding weekend. Doc. 122 at 3-8. He again, in his second brief in opposition to Results's Rule 60(b) motion, maintained that the medical records substantiated Hernandez's version of why he went to the hospital that morning. Doc. 148 at 9. He maintained that position for a third time in his third brief in opposition to the Rule 60(b) motion. Doc. 151 at 1 (where he maintained that "the records fully support Hernandez' trial testimony") & at 7 (where the assertion is made that "the medical

10

records corroborate Hernandez' testimony that he was treated for back pain" and that "[t]he additional complaints he made are not 'contradictions' of his trial testimony, given that the records verify that Hernandez was treated for 'back pain' as claimed all along.")

The exchange of communications between Ray and Kocurek relative to the making of the affidavit in question demonstrate that the whole purpose of the affidavit was to put in an affidavit form the arguments Ray already had made three times that the medical records were not inconsistent with the positions Hernandez had taken during and prior to his May 26, 2015 trial.

On November 28, 2018, Ray sent a letter to Kocurek outlining what he would like to have in an affidavit by Kocurek, and suggesting points that might be made in that affidavit. Doc. 180 at App. 006-007. "Danny" responded in ways that indicated that he would be helpful (in addition to informing Ray that "[t]he robotics team won the State Championship"). Id. at App. 007-008. Ray replied that "this is great news and congrats on the robotics team," and added that he would "draft up the declaration tomorrow." Id. at App. 008. The following day, Ray sent Kocurek an affidavit for comments. Id. at App. 008-009. That was the form of the affidavit that Kocurek signed, without change. Compare Doc. 180 at App. 017-019 with the affidavit of Kocurek

11

that accompanied Hernandez's motion for reconsideration, doc. 173 at App. 001-003. When Ray sent the affidavit to Kocurek, he noted that he had "made a few minor revisions and added a couple of statements" that were highlighted in yellow, and that Ray hoped Kocurek would find appropriate. Doc. 180 at App. 008-009. The yellow highlighting on the version sent by Ray to Kocurek shows that Ray's additions significantly added to what apparently Kocurek and Ray previously had discussed as the language to be used in the affidavit. Id. at App. 018-019.

In fact, Ray's additions provided the basis for most of the arguments made by Hernandez and Ray as to why the Kocurek affidavit is important. Ray added at the end of paragraph 3 the words "which could account for the labeling of headache as the 'Chief complaint'"; he added at the end of paragraph 5 "[i]t is logical to conclude that severe lower back pain could have contributed to the headache notated in the records"; and he added at the end of paragraph 6 "(ie after waking in the morning)"; he added the entirety of paragraphs 11 and 12 of the affidavit. Doc. 180 at App. 018-019 (the highlighted language). In other words, Ray caused the affidavit to be basically the same as the arguments he presented to the court in opposition to Results's Rule 60(b) motion. That position taken by Hernandez and Ray, now through the affidavit of Kocurek, makes no more sense now than it

12

did when it was made in opposition to the Rule 60(b) motion. The court dealt at length with Hernandez's position in the September 1, 2017 Memorandum Opinion and Order granting Results's Rule 60(b) motion. Doc. 154 at 20-25. Those pages of the Memorandum Opinion and Order are adopted here by reference.

Suffice to say, not one word was mentioned in the hospital records concerning any claim by Hernandez that he had suffered any kind of back injury while doing military service over the preceding weekend, and the only pertinent histories recorded by Kocurek relevant to Hernandez's reason for being in the emergency room were the past surgical history of "head at age 4 for injury" and the entry "Yes, dx with migraines" alongside "Similar Symptoms Previously." Id. at 21. The significant entries in the emergency room records were made by Kocurek. He is the one who put in the records the entries that are quoted at page 6 of this Memorandum Opinion and Order.

Interestingly, Kocurek never says anything in his affidavit to indicate that he made any incorrect entry in the hospital records, or that the hospital records did not truthfully reflect things that occurred upon Hernandez's admission to and treatment at the emergency room. At best, the Kocurek affidavit presents a series of speculations suggested by Ray. The affidavit is facially incredible and totally non-probative. It adds nothing

13

to the arguments presented by Ray for Hernandez in opposition to the Rule 60(b) motion, which were rejected then and are again being rejected by a denial of the motion for reconsideration.

    2.    <u>A Judgment Adjudicating All the Claims Has Been Entered</u>

On May 26, 2015, following a non-jury trial conducted on that date, this court entered a final judgment ruling that Hernandez have and recover nothing from Results in this action, and that all relief sought by Hernandez against Results in this action is denied. Doc. 66. On January 30, 2017, the Fifth Circuit reversed that judgment, rendered judgment in favor of Hernandez against Results on liability, and remanded the case to this court to determine Hernandez's damages and for further proceedings consistent with the Fifth Circuit's opinion. <u>Hernandez v. Results Staffing, Inc.</u>, 677 F. App'x 902 (5th Cir. 2017).

Results filed a motion under Rule 60(b) of the Federal Rules of Civil Procedure in April 2017, asking this court to relieve it of the burden of the Fifth Circuit's opinion and judgment of January 30, 2017. Docs. 111-113. The court developed a significant record, including the transcript of a hearing on the motion, related to Results' Rule 60(b) motion, as evidenced by the contents of this court's September 1, 2017 Memorandum Opinion

14

and Order. Doc. 154; <u>Hernandez v. Results Staffing, Inc.</u>, No. 4:14-CV-182-A, 2017 WL 3842858 (N.D. Tex. Sept. 1, 2017).

Based on that record, the record of things that occurred in this court at earlier dates, and a part of the record of the Fifth Circuit on the appeal from this court's judgment, this court reached the conclusions, and ruled, that fraud, misrepresentation, and misconduct on the part of Hernandez and Ray denied Results a full and fair opportunity to present its defense at the non-jury trial, and that those same matters, combined with fraud, misrepresentation, and misconduct in Hernandez's presentations to the Fifth Circuit in support of his appeal, prevented the Fifth Circuit from making a decision based on the true facts pertinent to issues raised in the appeal. Those conclusions, and related findings of this court, led to this court's ruling on September 1, 2017, that Results was relieved of the Fifth Circuit's adverse rulings against it. <u>Id.</u>

Hernandez appealed from this court's Rule 60(b) rulings. On October 24, 2018, the Fifth Circuit issued its opinion and judgment affirming all of this court's September 1, 2017 rulings. <u>Hernandez v. Results Staffing, Inc.</u>, 907 F.3d 354 (5th Cir. 2018).

As this court explained in an order issued December 12, 2018, the October 24, 2018 rulings of the Fifth Circuit left the

15

May 2015 judgment of this court as the final judgment in this action. Doc. 170 at 1-2. Hernandez responded to that order by, in effect, expressing agreement that the May 2015 judgment is, indeed, now the judgment in this action.³ Doc. 171 at 2. Thus, plaintiff's Rule 54(b) motion is inappropriate because it asks for a revision of this court's September 1, 2017 ruling after there has been entry of a judgment adjudicating all of the claims and all the parties' rights and liabilities that were put in issue in this litigation.

There remains for resolution Results's motion for sanctions, but the pendency of that motion does not cause the final judgment this court issued on May 26, 2015 to be less final. The motion for sanctions enjoys somewhat the same status as a post-judgment request for attorney's fees would have. Such a post-judgment request does not prevent a judgment of the claims on the merit from being a final one. See Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200-202 (1988); see also In re Private Counsel

---

³Hernandez equivocated by saying:
> Mr. Hernandez now realizes that he misinterpreted the procedural posture of the case and the court does appear to be correct that with the vacatur of the appellate court's decision that this court's original judgment is now or will upon finalization of all claims brought pursuant to Results' motion be reinstated.

Doc. 171. at 2.

16

Agreement, No. 5:98CV270, 1999 WL 1022131 at *6 & 7 (E.D. Tex. Nov. 5, 1999).

### 3. The Law of the Case Doctrine

This court ruled on September 1, 2017, that Results was relieved of the Fifth Circuit's adverse rulings against it in the Fifth Circuit's January 30, 2017 opinion and judgment because the fraud, misrepresentations, and misconduct of Hernandez and Ray denied Results a full and fair opportunity to present its defense at the May 26, 2015 trial and caused the Fifth Circuit to make its ruling reversing that judgment and remanding the action to this court on the basis of a false record and false arguments. By the opinion and judgment of the Fifth Circuit affirming this court's September 1, 2017 rulings, the Fifth Circuit, for all practical purposes, made exactly the same rulings. At the heart of those rulings was the determination that the representations made by Hernandez and Ray, both verbally and in writing, concerning Hernandez's reasons for going to the hospital emergency room the morning of July 15, 2013, were so false and fraudulent that Results was denied a full and fair opportunity to present its defenses at the May 26, 2015 trial, and caused the Fifth Circuit to base its decision to reverse and remand this court's May 26, 2015 final judgment in favor of Results on a false record.

17

By asking this court to reconsider those rulings, Hernandez is, in effect, asking this court to disregard the well-settled "law of the case" doctrine.

The doctrine is "based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 198 (1950); see also Fontainebleau Hotel Corp. v. Crossman, 286 F.2d 926, 928 (5th Cir. 1961). The doctrine applies not only to things decided explicitly, but also to matters settled "by necessary implication." Office of Thrift Supervision v. Felt, 255 F.3d 220, 225 (5th Cir. 2001); Cooper Tire & Rubber Co. v. Farese, 248 F. App'x 555, 558 (5th Cir. 2017).

There are three exceptions to the doctrine, "(i) the evidence on the subject at trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." Gene & Gene L.L.C. v. BioPay, L.L.C., 624 F.3d 698, 702 (5th Cir. 2010); see also Fuhrman v. Dretke, 442 F.3d 893, 896-97 (5th Cir. 2006); N. Miss. Commc'ns, Inc. v. Jones, 951 F.2d 652, 656 (5th Cir. 1992); Lyons v. Fisher, 888 F.2d 1071, 1074-75 (5th Cir. 1989). None of those exceptions applies here.

18

The affidavit of Kocurek presents nothing new. He has no independent recall of any of the facts pertaining to Hernandez's visit to the emergency room. Doc. 173, App. at 2, ¶ 2. His affidavit discloses on its face that it is based on nothing but pure speculation. It is just a restatement of arguments previously made by Ray for Hernandez, but this time in the form of a doctor's affidavit prepared by Ray that but repeats what Ray had argued before and had suggested to Kocurek should be in such an affidavit.[4] Doc. 188 at App. 001-006.

* * * * *

## Conclusion and Order

For each of the reasons given above, the court has concluded that Hernandez's motion for reconsideration should be denied.

Therefore,

The court ORDERS that such motion be, and is hereby, denied.

SIGNED March 20, 2019.

_____
JOHN McBRYDE
United States District Judge

---

[4] Apropos is the language in Texas Instruments v. Hyundai Elecs. Ltd., that:
> Litigants are expected to present their strongest case when the matter is first considered. A motion to reconsider based on recycled arguments only serves to waste the resources of the court.

50 F. Supp. 2d 619 (E.D. Tex 1999) (internal quotation marks, brackets, & citation omitted). See also Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc., Nos. 3:03-CV-2837-G & 3:04-CV-0348-G, 2005 WL 827076 at *3 (N.D. Tex. Apr. 6, 2005)("A motion for reconsideration should not be used . . . to proffer evidence that could have been presented earlier.")(internal quotation marks & citation omitted).