

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 1 5 2019

CLERK, U.S. DISTRICT COURT

By_____
         Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

In re Possible Discipline    §    NO. 4:19-MC-015-A
of Ryan Eugene Ray           §

## MEMORANDUM OPINION
and
### ORDER

This miscellaneous action was created by a severance from Case No. 4:14-CV-182-A of disciplinary proceedings against Ryan Eugene Ray ("Ray"), a member of the Bar of this court, who has been the attorney for the plaintiff, Jose Luis Hernandez ("Hernandez"), in such case.

So far as the court can determine, Ray's participation for years as the attorney for Hernandez in Case No. 4:14-CV-182-A are his only appearances before the undersigned in any action on the undersigned's docket. The court has concluded that Ray's conduct over the years in that one case has demonstrated that Ray is subject to significant discipline under the authority of Local Civil Rule LR 83.8(b)(1), (3), and (4), which provide as follows:

> (b) **Grounds for Disciplinary Action.** A presiding judge, after giving opportunity to show cause to the contrary, may take any appropriate disciplinary action against a member of the bar for:
>
> (1) conduct unbecoming a member of the bar;
>
> . . . .
>
> (3) unethical behavior;

(4)  inability to conduct litigation properly[.]

By an order issued in Case No. 4:14-CV-182-A on May 20,
2019, the court provided a summary of the facts that have caused
the court to conclude that Ray is subject to discipline pursuant
to the above-quoted three sections of Rule LR 83.8(b).  Doc. 50.[1]
A rather-detailed description of Ray's misconduct in Case No.
4:14-CV-182-A prior to September 1, 2017, was provided in the
memorandum opinion and order the court issued in that case on
that date.  Doc. 19.  The order part of that document, <u>id.</u> at 51,
granted the Rule 60(b)(3) motion of defendant, Results Staffing,
Inc. ("Results"), asking that the court grant Results relief from
the ruling of the United States Court of Appeals for the Fifth
Circuit, reported as <u>Hernandez v. Results Staffing, Incorporated</u>,
677 F. App'x 902 (5th Cir. 2017)("Hernandez I"), reversing and
rendering in favor of Hernandez the judgment this court had
rendered, after trial, in favor of Results against Hernandez.
<u>Id.</u>  The Fifth Circuit's Hernandez I reversal and rendition was
predicated in its entirety on the Fifth Circuit's conclusion that
the trial record established without dispute that a trip
Hernandez made to the hospital emergency room the morning of July
15, 2013, was for treatment of an injury he suffered over the

---

[1]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in
this Miscellaneous Case No. 4:19-MC-015-A.

preceding weekend while on duty for the United States military. Doc. 19 at 3-6. Had the trial record not been false by reason of the misconduct and fraud of Ray and his client, it would have disclosed that Hernandez's trip to the emergency room was for an entirely different reason.

The impropriety of Ray's conduct through the date of this court's September 1, 2017 memorandum opinion and order was the subject of a second appeal by Hernandez to the Fifth Circuit. That appeal resulted in an opinion and judgment of the Fifth Circuit affirming each of the rulings made by this court on September 1, 2017. Id. See Hernandez v. Results Staffing, Inc., 907 F.3d 354 (5th Cir. 2018)("Hernandez II").

The court has concluded that the appropriate discipline to be imposed on Ray for the court to properly address his conduct unbecoming a member of the Bar, his unethical behavior, and his inability to conduct litigation properly, would be to remove his name from the role of attorneys authorized to practice law before this court. The imposition of such a sanction will not come as a surprise to Ray. He anticipated it in a motion he filed with the Fifth Circuit in its Case No. 17-11201, seeking a stay of the Fifth Circuit's mandate in its decision affirming the rulings made by this court on September 1, 2017. Ray predicted in that motion that he "could face significant repercussions from

3

sanctions proceedings, including threats to his law license and the ability to practice law before the Northern District of Texas." Appellant's Mot. for Stay of Mandate, 11/14/2018 Dkt. Entry on Docket of the 5th Cir. in its Case No. 17-11201, at 10. His prediction of loss of the ability to practice before this court was an accurate assessment of the discipline that this court could and should impose on him for his repeated unethical and fraudulent conduct, which this court described in the September 1, 2017 order and that the Fifth Circuit concluded was serious enough to justify this court's decision to grant the relief Results sought by its Rule 60 motion, ordering that Results was relieved of the Fifth Circuit's Hernandez I judgment of reversal and remand of this court's judgment in favor of Results. Hernandez II, 907 F.3d at 365-66.

The specifics of Ray's conduct in violation of the Texas rules governing the conduct of attorneys are provided at pages 5-14 of the May 20, 2019 order. Doc. 50 at 5-14. Recent questionable conduct of Ray is described in this court's March 20, 2019 memorandum opinion and order, doc. 47, which discusses and rules on a motion Ray filed for Hernandez post-Fifth Circuit affirmance of the September 1, 2017 rulings, in the form of a motion for reconsideration of such rulings pursuant to the authority of Rule 54(b), doc. 25. The court noted in that

memorandum opinion and order that the court questioned the good faith and honesty of Hernandez and Ray in requiring counsel for Results and the court to devote their time and attention to such a motion. Doc. 47 at 3-4, 14-15.

Returning to Ray's pre-September 1, 2017 conduct, the court reiterates findings and conclusions the court expressed in the September 1, 2017 memorandum opinion:

1. In discussing the grounds of Results's Rule 60 motion, this court explained:

> As grounds for the motion, defendant alleged that after the Fifth Circuit issued its January 30, 2017 opinion rendering judgment for plaintiff against defendant on plaintiff's reemployment claim, and during the course of discovery related to the issues remanded to this court for resolution, defendant discovered evidence that established that one or more of the factual bases of the Fifth Circuit's opinion were incorrect and that the trial evidence upon which the Fifth Circuit relied in concluding that those facts were undisputed was the product of misrepresentation, fraud, and misconduct by plaintiff and his counsel.

> Defendant learned that plaintiff and his wife had given false testimony at trial concerning plaintiff's service-related back condition and his reason for going to the emergency room for medical assistance the morning of July 15, 2013, and that plaintiff and his counsel had in their possession in advance of the trial hospital records, which should have been, but were not, disclosed to defendant before the trial, that showed the true reason for his trip to the emergency room the morning of July 15, 2013.

Doc. 19 at 7-8.

2.    Based on the evidence the court received in support of Results's Rule 60 motion, the court made the following findings:

> The court is satisfied, and finds, that plaintiff's visit to the emergency room the morning of July 15, 2013, was not for care or treatment of an aggravation of a back condition he suffered while on military duty over the preceding weekend but, instead, was for treatment of a severe headache, probably a migraine in character, that had its onset after he arrived home the morning of July 15, 2013, and that the low back pain he mentioned upon his hospital admission as an associated symptom was not the cause of his visit to the hospital but was a non-disabling chronic back pain that he had been suffering for years.  The court further finds that to whatever extent plaintiff and his wife gave testimony inconsistent with the findings expressed in the preceding sentence, their testimony was intentionally false, and was given by them in order to disadvantage and mislead the defendant in its trial preparation and presentation, and that it ultimately misled the Fifth Circuit in plaintiff's appeal from this court's judgment of dismissal.

> The court is further satisfied, and finds, that plaintiff's counsel had, and knew the contents of, the records of plaintiff's visit to the emergency room the morning of July 15, 2013, many days before the trial commenced on May 26, 2015, and that he did not take appropriate steps to supplement an incomplete and misleading response plaintiff had made to defendant's previously served discovery request on plaintiff seeking production of all documents related to plaintiff's visit to the emergency room; and, the court is satisfied, and finds, that counsel for plaintiff did not disclose those records to counsel for defendant in advance of the trial for the purpose of misleading defendant and its counsel into believing that plaintiff's July 15, 2013 visit to the emergency room was for care and treatment of an aggravation of a back condition that he suffered over the weekend while performing military duties.

The court further finds that the
misrepresentations made by plaintiff and his wife at
the trial concerning plaintiff's reason for seeking
emergency room care the morning of July 15, 2013, and
the withholding of the emergency room records by
plaintiff's counsel from defendant's trial counsel
before and during that trial, put defendant at an
unfair disadvantage in defending itself at the trial,
put defendant's appeal counsel at an unfair
disadvantage in his presentations to the Fifth Circuit
and in answering questions the members of the Fifth
Circuit posed to him during oral argument, and put the
Fifth Circuit at an unfair disadvantage in evaluating
what the true facts were concerning the July 15, 2013
visit to the emergency room.

Id. at 13-15.

3. The court made the following additional findings in the

September 1, 2017 order:

[T]he court finds by clear and convincing evidence that
plaintiff, often through his attorney, engaged in
fraud, misrepresentation, and misconduct in plaintiff's
presentations, verbally and in writing, to the court in
pretrial matters, during the trial, and in his
presentations to the Fifth Circuit in support of his
appeal from this court's dismissal of his claims. As a
consequence, the trial court record was false in that
it failed to disclose plaintiff's true reasons for his
visit to the hospital emergency room the morning of
July 15, 2013, and the Fifth Circuit was presented with
a false record and false arguments by plaintiff,
through his counsel, on that subject.

Id. at 35; and:

The court finds by clear and convincing evidence
that if defendant had been provided the emergency room
records plaintiff, through his counsel, had in his
possession before the trial commenced, and if plaintiff
and his wife had testified truthfully at trial,
defendant would have been able to more fully and fairly
present its defense to plaintiff's claim that during

the day of July 15, 2013, he was convalescing from an aggravation he suffered over the preceding weekend of a preexisting back condition. If the truth concerning plaintiff's reason for admission to the hospital had been disclosed during or before the trial, defendant would have been in a position to effectively argue that plaintiff's failure to be at work the morning of July 15, 2013, was not the result of any military-related injury, or aggravation of an injury, and that during the day of July 15, 2013, plaintiff was not convalescing from such an injury or aggravation.

As it was, defendant was in a position that its counsel had no choice but to assume the correctness of the false presentations of plaintiff that his emergency room visit, and his absence from work on July 15, 2013, were caused by such an injury or aggravation. Had the truth been disclosed at trial, defendant's appellate counsel would have been in a position to respond to Circuit Judge Elrod's question, <u>supra</u> at 5 n.2, that there was evidence that directly rebutted plaintiff's claim that he went to the hospital the morning of July 15, 2013, for treatment for an aggravated injury to his back; and, if the truth had been disclosed at the trial, the Fifth Circuit would not have issued an opinion indicating that it was undisputed that the convalescence plaintiff was experiencing during the day on July 15, 2013, was related to an aggravation he suffered over the weekend of a chronic back problem.

<u>Id.</u> at 35-37; and:

4. Other pertinent findings of the court expressed in the

September 1, 2017 order were the following:

[P]laintiff and his counsel engaged in misconduct in this case that "completely sabotaged the federal trial machinery, precluding the 'fair contest' which the Federal Rules of Civil Procedure are intended to assure." [<u>Rozier v. Ford Motor Co.</u>, 573 F.2d 1332, 1346 (5th Cir. 1978).] And, as in <u>Rozier</u>, "[i]nstead of serving as a vehicle for ascertainment of the truth, the trial in this case accomplished little more than the adjudication of a hypothetical fact situation

imposed by [plaintiff's] selective disclosure of information," id.

Id. at 46; and:

> The court finds by clear and convincing evidence that plaintiff and his counsel pursued an unconscionable plan or scheme which was designed to improperly influence this court in its decision, and then the Fifth Circuit in its decision. See, id., at 1338.

> The court has found from clear and convincing evidence that the judgment of the Fifth Circuit was obtained through fraud, misrepresentation, or other misconduct on the part of plaintiff and his counsel. Their inappropriate conduct led to the trial record that caused the Fifth Circuit to make the ruling it did in favor of plaintiff. The court finds from clear and convincing evidence that the conduct of plaintiff and his counsel prevented defendant from fully and fairly presenting its defense at trial, which, in turn, prevented the Fifth Circuit from having a full, complete, and honest record upon which to base its decision.

Id. at 47.

All of the findings expressed in the September 1, 2017 memorandum opinion and order, the March 20, 2019 order, and the May 20, 2019 memorandum opinion and order were based on clear and convincing evidence. Those clear and convincing evidence findings are adopted here, and they provide clear-cut evidence that Ray repeatedly engaged in conduct unbecoming a member of the Bar and unethical behavior, and is unable to conduct litigation properly. All findings made in this order are based on clear and convincing evidence.

<u>Ray Has Had Ample Opportunity to Respond,</u>
<u>and the Response He Made Confirms</u>
<u>That He Should Not Be a Member of the Bar of this Court</u>

By the order the court issued May 20, 2019, Ray was informed
of the bases of the court's concerns relative to his violations
of Local Rules LR 83.8(b)(1), (3), and (4), and he was invited to
make whatever response he wished to make to the court's concerns
and the possibility that the court might issue an order imposing
discipline, including the possibility of an order directing the
court clerk to remove his name from the role of attorneys
authorized to practice law before this court, for his
inappropriate conduct.  Doc. 50 at 15-16.

On June 4, 2019, Ray filed a response to the court's
concerns, which was supported by his declaration.  Docs 51 & 52.
By order issued June 5, 2019, the court afforded Ray an
opportunity to have a hearing on the subject of possible
discipline against him, and gave him a deadline for informing the
court as to whether he wished to have such a hearing.  Doc. 53.
By a response Ray filed on June 7, 2019, he declined the court's
invitation to have a hearing.  Doc. 54.

Neither the response Ray filed June 4, 2019, nor its
accompanying declaration provides any persuasive explanation for
Ray's inappropriate conduct in his representation of Hernandez.

Rather, while disclosing a flair for autobiographical writing,[2] the explanations Ray gave tend to emphasize his lack of candor, his lack of remorse for his inappropriate conduct, his unwillingness to recognize the impropriety of his conduct, and his inability to conduct litigation properly and ethically or to have an understanding of how it should be conducted.

### Reasons Why the Court Has Concluded That Ray Should No Longer Be Permitted to Practice Before this Court

The court finds from clear and convincing evidence that Ray repeatedly has engaged in conduct unbecoming a member of the Bar of this court for each of the reasons stated in this order and in each of the previously issued orders mentioned above; that he lacks the ability to conduct litigation properly, for each of those reasons; and, that he has engaged in unethical conduct for each of those reasons.

The court is ordering removal of Ray's name from the list of attorneys authorized to practice law before this court. The court has considered, but has decided against, imposition of

---

[2]While Ray mentions in his declaration his business of representing property owners in contesting ad valorem taxes, doc. 52 at ECF 2, he fails to describe the extent of adversary proceedings in which that business has caused him to participate. Each of the hearings is adversarial in nature, with a three-member panel making a decision after hearing the evidence and argument of the attorney for the contestant and the evidence and argument of the appraisal district representative. In each instance, Ray has gained litigation experience. He started that business in 2009, ten years ago. Id. Over that time, he undoubtedly participated in hundreds of adversary proceedings. Thus, he hardly can honestly contend that he has not had a chance to develop litigation skills. He has provided other documentation that indicates that he has clients he continues to represent year after year. Doc. 47 at 5-6.

lesser sanctions, having concluded that no lesser sanction will adequately and appropriately address the seriousness of Ray's misconduct.

The court considered financial sanctions, but was frustrated in the court's attempt, described below, to obtain information that would enable the court to make an informed decision as to an appropriate financial sanction to be imposed.

On April 24, 2019, the parties filed a joint stipulation of dismissal, doc. 48, which included a request for dismissal of a motion for sanctions by which counsel for Results had sought $366,686.97 as attorneys' fees incurred by Results by reason of the inappropriate conduct of Ray in his capacity as attorney for Hernandez, doc. 50 at 14. By the time the joint stipulation of dismissal was filed, Ray's conduct had caused the attorneys for Results to incur significantly greater attorneys' fees. Id. at 14-15. In the May 20, 2019 order, the court made known to Ray that the court was considering financial sanctions, and suggested to Ray that if he wished the court to take into account payment Ray already had made to Results or its counsel, he could disclose the fact of such a payment, and its amount, to the court for the

court's consideration in deciding on what sanctions to impose. The court explained:

> If Ray made a payment to defendant or its counsel in response to defendant's motion for sanctions, as supplemented, the court will take such a payment into account in deciding whether further sanctions should be imposed. If Ray made such a payment and wishes to disclose the fact of such a payment and its amount, he is to do so in the document the court by this order is inviting him to file.

Doc. 50 at 15.

On June 4, 2019, Ray responded to the court's suggestion by declining in the declaration he filed June 4, 2019, to inform the court of whatever payment he might have made in order to induce Results to dismiss its motion for sanctions. Doc. 52 at ECF 9.[3]

By an order issued June 5, 2019, the court again encouraged Ray to provide the court information concerning any financial detriment he experienced as part of the settlement that led to the court's recent order of final dismissal. Doc. 53 at 2. In the June 5 order, the court suggested to Ray the steps he might take to make a disclosure appropriate. Id. at 1-2. The court included in the order the following:

> Ray has declined to inform the court of any financial detriment he experienced as part of the settlement that led to the court's recent order of final dismissal of the above-captioned action, indicting that his

---

[3]The "ECF" reference is to the header number at the top of the page in the document on the docket of this Case No. 4:19-MC-015-A.

declination is based on the fact that the settlement
has as one of its terms that it is to be confidential.

The court is satisfied that it has enough
information to make a ruling on possible discipline to
impose on Ray without a hearing, but is affording Ray
an opportunity to make his case on the issue of
possible discipline after disclosure to the court of
any financial detriment he already has experienced by
reason of his conduct and/or at a hearing if he wishes
the court to schedule one.  Therefore,

The court suggests that if Ray wishes to inform
the court of any financial detriment he experienced as
a result of the settlement, he obtain from the other
parties to the settlement permission to make the
disclosure the court has invited him to make.  If he
wishes to make such a disclosure, he must do so by a
document filed in this case by 2:00 p.m. on June 7,
2019.

Doc. 53 at 1-2.

Ray responded to the June 5, 2019 order by again informing

the court, without further explanation, that he declined "to

reveal the terms of the confidential settlement agreement

relating to this case."  Doc. 54 at 1.  Thus, Ray has, in effect,

informed the court that he is not interested in the court

considering imposition of financial sanctions against him.

The court has given thought to suspension of Ray's ability

to practice before this court for a specified period of time.  In

doing so, the court has considered each and every excuse Ray gave

for his conduct and conduct of his client in the Response to

Order to Show Cause and his declaration he filed June 4, 2019,

docs. 51 & 52, but has not been persuaded that any of the factors presented by Ray can serve as adequate excuses.

The court cannot overlook the facts that are so apparent from the record of this action that Ray gave little consideration as the years passed to his ethical obligations or the obligations imposed on him by the en banc opinion of this court in <u>Dondi Properties Corp. v. Commerce Savings & Loan Ass'n</u>, 121 F.R.D. 284 (N.D. Tex. 1988)(en banc). The en banc <u>Dondi</u> opinion had as one of its goals informing and educating members of the Bar of this court that they should not engage in the kinds of inappropriate conduct in which Ray engaged in this case. In <u>Dondi</u>, this court made clear that the practices it expected from the members of the Bar of this court applied to inexperienced, as well as experienced, lawyers, saying:

> Judges and magistrates of this court are required to devote substantial attention to refereeing abusive litigation tactics that range from benign incivility to outright obstruction. Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive.
>
> As judges and former practitioners from varied backgrounds and levels of experience, we judicially know that litigation is conducted today in a manner far different from years past. Whether the increased size of the bar has decreased collegiality, or the legal profession has become only a business, or experienced lawyers have ceased to teach new lawyers the standards

to be observed, or because of other factors not readily
categorized, we observe patterns of behavior that
forebode ill for our system of justice. We now adopt
standards designed to end such conduct.

Dondi, 121 F.R.D. at 286 (footnote omitted).

Contrary to the expectations of Dondi, Ray's conduct on
behalf of Hernandez fueled unnecessarily the costs to Results of
this litigation to the point of causing it to expend something in
excess of $340,000 before it was all over with. Ray's behavior
as attorney for Hernandez was of a pattern that tended to be
destructive of the administration of justice in this action. He
engaged in fraud, misrepresentation, and misconduct that created
a false record and provided fodder for false arguments by
Hernandez and his counsel to this court and to the Fifth Circuit
in the initial appeal. Ray sat silently by when, at oral
argument in the Fifth Circuit during the initial appeal, one of
the panel members asked the attorney for Results if there was any
evidence in rebuttal to plaintiff's claim that his trip to the
emergency room the morning of July 15, 2013, was to receive
medical attention for a back injury he sustained over the
weekend, to which the attorney for Results was forced to respond
"there is no other real evidence one way or the other." Doc. 19
at 5 n.2. Only an attorney completely devoid of an ethical or
moral sense of right and wrong would have sat quietly by as

Results's attorney was required to make that sort of answer, bearing in mind that Ray had in his possession documents, which he had withheld from Results, showing that the real reason Hernandez went to the hospital that morning was for a condition that was unrelated to his military service the preceding weekend. The emergency room records Ray possessed disclosed the following:

HPI Comments: History of Present Illness:

Historian: Patient.

Chief Complaint: Headache, frontal
Onset/Duration of symptoms: Today
Where did it Occur: Home
Severity: severe.
Time Course: Persisting.
Context of Events: Spont onset
Worsened by: nothing
Improved by: nothing
Associated Symptoms: Low back pain, sharp - similar to prev
Treatments Prior to Arrival: None
Sick Contacts: None
Recent Doctor Visits or Treatments: None
Similar Symptoms Previously: Yes, dx with migraines

Doc. 19 at 8.

The records also showed (1) under the heading "Past Medical History," as the first diagnosis, "[m]igraine," (2) that the "Encounter Diagnosis" was "[h]eadache (primary encounter diagnosis)" and "[l]ow back pain," and (3) that the location of defendant's headache was "Generalized." Id. at 9.

Ray knew before the panel member asked that foregoing question that there was nothing in the medical records saying

17

that Hernandez complained that he had experienced any injury while on military service duty over the weekend, and that the only pertinent past-medical history shown in the medical records explaining why he was at the hospital were the entries showing that his past surgical history included a head injury at age 4 and a history of migraines, alongside the words "Similar Symptoms Previously." Doc. 47 at 13.

Standards adopted by <u>Dondi</u> that are particularly pertinent here include the following:

> From them we adopt the following as standards of practice to be observed by attorneys appearing in civil actions in this district:
>
> (A)  In fulfilling his or her primary duty to the client, a lawyer must be ever conscious of the broader duty to the judicial system that serves both attorney and client.
>
> (B)  A lawyer owes, to the judiciary, candor, diligence and utmost respect.
>
> . . . .
>
> (D)  A lawyer unquestionably owes, to the administration of justice, the fundamental duties of personal dignity and professional integrity.

<u>Dondi</u>, 121 F.R.D. at 287-88 (footnote omitted).

The en banc court added in <u>Dondi</u> the court's expectations of attorneys who comply with the standards of conduct described by <u>Dondi</u>, saying:

> Attorneys who abide faithfully by the standards we adopt should have little difficulty conducting themselves as members of a learned profession whose unswerving duty is to the public they serve and to the system of justice in which they practice. Those litigators who persist in viewing themselves solely as combatants, or who perceive that they are retained to win at all costs without regard to fundamental principles of justice, will find that their conduct does not square with the practices we expect of them. . . .
>
> . . . .
>
> Similarly, we do not imply by prescribing these standards that counsel are excused from conducting themselves in any manner otherwise required by law or by court rule. We think the standards we now adopt are a necessary corollary to existing law, and are appropriately established to signal our strong disapproval of practices that have no place in our system of justice and to emphasize that a lawyer's conduct, both with respect to the court and to other lawyers, should at all times be characterized by honesty and fair play.

<u>Id.</u> at 288-89 (footnote omitted).

The goal of the <u>Dondi</u> standards was to promote "the efficient administration of our system of justice" and "to satisfy the goals of reducing litigation costs and expediting the resolution of civil actions." <u>Id.</u> at 291.

Ray's conduct on behalf of Hernandez violated virtually every one of the expectations expressed by this court in <u>Dondi</u>.

He put this court and the Fifth Circuit at an unfair disadvantage
in evaluating what the true facts were concerning Hernandez's
July 15, 2013 visit to the emergency room by sponsoring and
providing false information on that subject to this court and the
Fifth Circuit and by standing silently by when the attorney for
Results was forced to give an uninformed answer to the critical
question directed to the attorney by a panel member.  Ray
participated knowingly and intentionally in presenting to this
court and to the Fifth Circuit a false testimony and false
arguments concerning the reason for the July 15, 2013 emergency
room visit.  Supra at 5-8.  The conduct of Ray and his client
"completely sabotaged the federal trial machinery, precluding the
'fair contest' which the Federal Rules of Civil Procedure are
intended to assure."  Supra at 8.  Ray and his client "pursued an
unconscionable plan or scheme which was designed to improperly
influence this court in its decision, and then the Fifth Circuit
in its decision."  Supra at 9.  Their conduct prevented Results
"from fully and fairly presenting its defense at trial, which, in
turn, prevented the Fifth Circuit from having a full, complete,
and honest record upon which to base its decision."  Id.  Because
of the dishonest conduct of Ray and his client, "[i]nstead of
serving as a vehicle for ascertainment of the truth, the trial in
this case accomplished little more than the adjudication of a

hypothetical fact situation imposed by [Hernandez's and Ray's] selective disclosure of information." Supra at 8-9.

If this court were to order less than removal of Ray's right to practice law before this court as discipline on Ray, the expectations of Dondi would be sorely disappointed. When everything presented to the court in the handling of the underlying litigation was taken into account, the court concluded that disbarment to practice before this court would be the only discipline that would adequately address Ray's inappropriate conduct in the underlying action. Ray has recognized for some period of time that his conduct in representing Hernandez caused him to be faced with a threat to his ability to practice law before this court. Supra at 3-4. This court is not in a position to remove from Ray his law license,[4] but is firmly convinced that Ray correctly predicted that he put his ability to practice law before this court at risk by his conduct while representing Hernandez. In the order the court issued May 20, 2019, the court informed Ray that the court agreed with Ray's prediction that his fraudulent and unethical conduct was egregious enough to cause him to lose his law license and the

---

[4]As contemplated by Texas Disciplinary Rules, the court is ordering the clerk of court to provide copies of this order and the September 1, 2017 memorandum opinion and order in Case No. 4:14-CV-182-A to the appropriate disciplinary authorities of the State Bar of Texas. Tex. Disciplinary R. Prof'l Conduct 8.03(a), reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 2019)(Tex. State Bar R. art. X, § 9).

ability to practice in the Northern District of Texas. Doc. 50 at 2. The court further explained that this court has no authority to deprive Ray of his law license, but does have the authority under the Local Rules of this court to cause him to lose his right to practice before this court. Id. Upon further study of the record of the underlying Hernandez action, the court is perfectly satisfied that Ray's misbehavior that was repeated time and time again over a period of years was so egregious that any discipline short of loss of his ability to practice before this court would not be adequate. In imposing that discipline on Ray, the court has fully considered the factors the Fifth Circuit said that a court should consider when imposing a sanction after finding misconduct. See In re Sealed Appellant, 194 F.3d 666, 673 (5th Cir. 1999). The court can infer Ray's mental state when he repeatedly engaged in his inappropriate conduct. A fair inference from his repeated violations of his ethical and moral obligations over a period of years is that he intentionally did what he did, knowing that it was wrong. The actual and potential injury of his misconduct included hundreds of thousands of dollars of financial loss to the opponent in his litigation and untold hours of time devoted by this court and the Fifth Circuit to evaluation of the records of the underlying action, ruling on motions, and otherwise resolving issues that were presented by

22

reason of Ray's misconduct. Aggravating factors include those mentioned above, and the obvious stress that the owners and managers of Results have undoubtedly suffered by reason of the developments in the underlying litigation. In addition to considering the factors mentioned by the Fifth Circuit in the In re Sealed Appellant opinion, the court, in deciding that disbarment from practice before this court is an appropriate sanction to impose on Ray, took into account other factors the Fifth Circuit has considered appropriate when affirming a district judge's disbarment ruling. The In re Sealed Appellant court summed up its reasons for affirmance of the disbarment ruling as follows:

> The power of disbarment is necessary to protect the public's confidence in the profession and the judicial system because a court implicitly represents that an attorney permitted to practice before it is in good standing to do so. Disbarment is generally appropriate when a lawyer engages in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously, adversely reflects on the attorney's fitness to practice. [Appellant] violated ethical duties owed to the public, the profession, and the judicial system. By backdating the endorsement of the stock certificate and lying or being deliberately misleading under oath, [Appellant] engaged in intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on his fitness to practice. It follows that disbarment is the appropriate baseline disciplinary action.

194 F.3d at 674 (footnotes omitted).

The court finds that Ray engaged in intentional conduct, involving dishonesty, fraud, deceit, and misrepresentation.

Apropos to the court's decision is the language used by the Fifth Circuit in Crowe v. Smith:

> 'The power to disbar an attorney proceeds upon very different grounds' from those which support a court's power to punish for contempt. [Cammer v. United States, 350 U.S. 399, 408 n.7 (1956)](quoting, Ex Parte Robinson, 86 U.S. (19 Wall.) 505, 512 22 L. Ed. 205 (1873)); Ex Parte Wall, 107 U.S. 265, 288, 2 S. Ct. 569, 27 L. Ed. 552 (1883)(stating that a disbarment proceeding requires no formal indictment, because it is not for the purpose of punishment, but for the purpose of preserving the courts of justice from the official ministration of persons unfit to practice in them); Cunningham v. Ayers, 921 F.2d 585, 586 (5th Cir. 1991)(Wisdom, J.)(Disbarment proceedings are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.)(quoting In re Derryberry, 72 B.R. 874, 881 (Bankr. N.D. Ohio 1987)). . . . It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers. [RTC v. Bright, 6 F.3d 336, 340 (5th Cir. 1993)]; Howell v. State Bar of Texas, 843 F.2d 205, 206 (5th Cir. 1988)(Since the early days of English common law, it has been widely recognized that courts possess the inherent power to regulate the conduct of attorneys who practice before them and to discipline or disbar such of those attorneys as are guilty of unprofessional conduct.); Flaksa v. Little River Marine Constr. Co., 389 F.2d 885, 889 n.10 (5th Cir. 1968)(The power of a court to discipline members of its own bar can scarcely be doubted seriously. An attorney is under no obligation to seek admission to the bar of a United States district court. He is at liberty to abstain from membership in that or any other bar. But when he does apply and is admitted he secures certain privileges and also assumes definite obligations. The

power of a court to impose appropriate and reasonable sanctions upon those admitted to its bar is a familiar phenomenon and lies within the inherent power of any court of record.)

151 F.3d 217, 229-30 (5th Cir. 1998)(internal quotation marks and parentheses omitted).

The court has concluded that Ray is unfit to practice in this court, and that his disbarment from such practice will protect the court and the public from his ministrations as such an unfit person.

Order

Therefore,

The court ORDERS that the clerk of court remove Ray's name from the list of attorneys authorized to practice before this court, and that if Ray seeks readmission, he attach to his application for readmission a copy of this memorandum opinion and order.

The court further ORDERS that the clerk of court provide copies of this order and the September 1, 2017 (doc. 19) and May 20, 2019 (doc. 50) orders in Case No. 4:14-CV-182-A to the appropriate office of the State Bar of Texas for consideration of

possible action to be taken by the disciplinary section of that organization.

SIGNED July 15, 2019.

JOHN McBRYDE
United States District Judge